Argued January 11, affirmed January 24, rehearing denied February 28, 1928.

## E. R. STARK ET AL. *v.* COE A. McKENNA ET AL.

### (263 Pac. 391.)

**Principal and Agent—Realty Purchaser Could not Hold Broker's Agent Liable for Broker's Delinquency, Where Principalship was Sufficiently Disclosed, and Acts were Within Authority.**

1. Where all of the acts of a real estate broker's agent were within his authority as agent, the purchaser, in action for breach of contract to complete dwelling-house purchased, could not hold him liable for the broker's delinquency, where the principalship had been sufficiently disclosed by the agent.

**Pleading—Allowance of Amendments of Pleadings During Trial Rests in Presiding Judge's Discretion.**

2. Amendments of pleadings during trial are allowed or disallowed in the discretion of the judge presiding.

**Appeal and Error—Reviewing Court will not Interfere With Trial Court's Granting or Refusing Permission to Amend Pleadings During Trial, in Absence of Showing of Abuse of Discretion.**

3. In the absence of a showing of abuse of discretion, a reviewing court will not interfere with the trial court's action

---

1. Personal liability of broker for breach of contract by principal, see notes in 6 A. L. R. 641; 20 A. L. R. 132. See, also, 21 R. C. L. 845. Personal liability of agent to third persons, see notes in 54 Am. Rep. 233; 22 Am. St. Rep. 508.

2. Trial amendments, see note in 5 Ann. Cas. 674.

3. See 2 R. C. L. 218.

in granting or refusing a party permission to amend his pleadings during the trial.

**Pleading—Refusal to Permit Amendment to Complaint in Minor Particular During Trial After One Amendment had Been Allowed Held not Abuse of Discretion.**

4.   In purchasers' action for damages for breach of contract to complete dwelling-house, refusal to permit plaintiffs to amend complaint during trial in a minor particular, after one amendment had been allowed as trial progressed, *held* not abuse of discretion.

**Appeal and Error—In Suit for Damages for Failure to Complete Building According to Contract, Error in Instruction Restricting Application of Building Code to Part to be Completed by Vendor After Sale Held Harmless.**

5.   Where, in an action by real estate purchasers against vendors and brokers for damages because a house on land purchased was allegedly not completed according to the contract made at time of purchase, the first story having been finished at that time, error in instruction in restricting the application of the city building code to the second story, the part yet to be finished by the vendor after sale, *held* harmless, since its effect was to limit the extent of the damages, and did not contribute to the liability or nonliability of defendants for whom verdict had been directed.

**Vendor and Purchaser—Terms of Contract Between Vendor and Purchaser, Where They Dealt Orally Through Intermediary, Held for Jury.**

6.   Where a vendor and purchaser dealt through an intermediary, and it appeared that there was a difference of opinion as to what he had orally promised each party, matter of ascertaining contract's terms *held* for jury.

**Appeal and Error—Reviewing Court Held Bound by Jury's Verdict on Conflicting Evidence as to Oral Terms of Contract.**

7.   In purchaser's suit for damages for breach of contract, reviewing court *held* bound by jury's verdict on conflicting evidence as to oral terms of contract.

**Appeal and Error—Brokers, Admitting Allegation That They Acted for Vendor and Purchaser in Negotiating Sale, Could not, on Review, Deny Agency for Vendors.**

8.   Where, in an action by purchasers for breach of contract to complete dwelling-house against brokers negotiating the sale, the brokers had admitted an allegation in the complaint that they were acting for both plaintiffs and defendants in making the contract set out in complaint, they could not, on review, be heard to deny that they were agents for the vendors as well as for purchasers.

**Brokers—Broker, Guilty of Fraudulent Representation, may also be Guilty of Breach of Contract.**

9.   The fact that a broker, bringing parties into a contractual relationship for sale of dwelling-house, was guilty of fraudulent

---

7.   See 2 R. C. L. 194.
8.   See 2 R. C. L. 183.

representation, will not preclude his also being held for breach of contract.

**Brokers—Broker, Promising Purchaser to Complete House According to Specified Terms, Held Bound Thereby.**

10. In an action by purchaser against vendors and brokers for breach of contract to complete dwelling-house purchased, *held* fact that the broker personally promised the purchaser that the building would be completed according to specified terms, bound him on such contract to complete building according to terms of contract.

**Vendor and Purchaser—Purchasers Held not Bound to Return Property After Discovering Breach of Contract, but Could Keep Property and Sue for Damages.**

11. Purchasers of realty were not bound, on discovery that contract had been breached by noncompletion of house according to the original agreement, to return the property after discovering the breach of contract, but they could keep it and sue for damages.

**Brokers—Broker, Accepting Benefits of Transaction Between Co-broker and Purchasers, cannot Repudiate Parts Thereof Disadvantageous to Him.**

12. In purchasers' action against brokers and vendors for breach of contract to complete dwelling-house purchased by plaintiffs, where plaintiffs, seeking to make purchase, went to offices of broker, who referred them to party occupying a desk in his office, latter working with broker, and receiving part of commissions paid for services rendered by him, *held* that broker, having accepted and retained half of commissions paid in deal between purchasers and vendors, could not accept benefits of transaction and repudiate parts thereof disadvantageous to him.

**Brokers—Vendor and Purchaser—Under Complaint of Noncompletion of Building in Accordance With Building Code as Agreed, Evidence to Show Deviation from Code on Completion of the House Held Admissible.**

13. Under a complaint by a purchaser of realty against the vendor and brokers for noncompliance with contract promising to complete the house according to the city building code terms, evidence to show deviation from such building code, on the completion of the house, *held* admissible to show deviation from undertaking.

**New Trial—Four Thousand Five Hundred Dollars for Failure to Complete House According to Contract Held not so Excessive as to Show Passion or Prejudice.**

14. In action by purchasers against vendors and brokers for noncompliance with an agreement to complete a house in accordance with the terms of city building code, the reviewing court could not say that a verdict for $4,500 for such failure was so excessive as to show passion or prejudice, even though the dwelling may have cost considerably more than $4,500.

---

11. See 27 R. C. L. 630.

Joint Adventures—Party Undertaking to Procure House for Plaintiffs, Who Worked With Broker and Divided Profits, Held Joint Adventurer With Broker.

15. Party undertaking to procure house for plaintiffs, completed and finished to their satisfaction, who was not an employee of broker with whom he officed, but they worked together, and sustained relation of partners in enterprises in which they both engaged, and divided the profits, *held* to sustain relation of joint adventurer with broker.

Evidence—Where Written Contract Provided Building Should be Completed as Agreed, but Details were Lacking, Parol Evidence Held Admissible to Show Agreement.

16. Where a written contract for the sale of realty provided that a house partially completed should be completed, and certain other work done as agreed, and details of contract were not set out, parol evidence *held* admissible to show such agreement.

Brokers—Broker, Agreeing With Purchaser to Complete House He was Selling for Vendors, and Having Failed to Do so, Held Liable on Contract.

17. Where a broker agreed to complete a house he was selling for the owners, but the house was not completed as per contract of the vendors and such broker, broker *held* personally liable to purchaser on his contract.

---

Agency, 2 C. J., p. 812, n. 92, p. 954, n. 83.
Appeal and Error, 3 C. J., p. 358, n. 84; 4 C. J., p. 662, n. 82, p. 799, n. 34, p. 850, n. 51, p. 994, n. 55, p. 1029, n. 30, p. 1041, n. 32.
Contracts, 13 C. J., p. 627, n. 33, p. 657, n. 92, 93, p. 776, n. 96, p. 796, n. 47.
Damages, 17 C. J., p. 1123, n. 67.
Estoppel, 21 C. J., p. 1207, n. 38, p. 1209, n. 59.
Evidence, 22 C. J., p. 1173, n. 40.
Joint Adventures, 33 C. J., p. 842, n. 5, p. 872, n. 30.
New Trial, 29 Cyc., p. 842, n. 95.
Pleading, 31 Cyc., p. 368, n. 9.

From Multnomah: George W. Stapleton, Judge.

Department 1.

Two appeals were taken from the judgments rendered in this action. A judgment was rendered in favor of defendant Charlesworth upon his motion for a directed verdict at the close of taking the testimony. A verdict was rendered in favor of defendants Hilde-

---

15. Joint adventure defined, 48 A. L. R. 1043, 1049, 1056. See, also, 15 R. C. L. 500.

16. See 10 R. C. L. 1032.

brandt by the jury and a judgment entered dismissing said action as to them. Plaintiffs appealed from the judgments in favor of said Charlesworth and the Hildebrandts. The jury returned a verdict in favor of plaintiffs and against the defendants Coe A. McKenna, doing business as Coe A. McKenna & Company, and C. R. Adams, for the sum of $4,500. Judgment was duly rendered in plaintiffs' favor on said verdict. Said defendants McKenna and Adams appealed from the judgment rendered against them.

Plaintiffs instituted this action to collect damages alleged to have resulted to them from breach of a contract entered into between them and all of the defendants for the completion of a dwelling-house owned by defendants Hildebrandt and sold by them through said McKenna to plaintiffs. The contract, alleged to have been so breached by defendants, was for the completion of the dwelling then partially constructed according to agreements between the plaintiffs and defendants, partly in writing and partly oral. Defendant Coe A. McKenna conducted a real estate office and transacted a real estate business, including purchasing property for buyers as well as selling property for vendors. Defendant Adams had a desk in the offices of said McKenna, transacted business in connection with him and shared commissions with him for the business actually transacted through said Adams. Defendant Charlesworth was an employee of defendant McKenna, had charge of office affairs and was general manager during the absence of McKenna from his office. Plaintiffs applied to the defendant McKenna at his office for assistance in purchasing a dwelling. Plaintiff E. R. Stark informed the said McKenna that he wanted to purchase a dwelling for his family as a home; that he knew nothing

about such matters from personal experience and that he knew nothing about the art of building. He was then assured by Adams, to whom he was referred by a clerk in said McKenna's office, that that was a part of the business of Mr. McKenna and that they would look after his interests. Thereupon Adams, in the name of Coe A. McKenna & Company, showed a number of dwellings to plaintiffs and later directed their attention to the dwelling then occupied by defendants Hildebrandt which was only partially completed. The first story was practically finished but the sceond story was incomplete in several particulars. Plaintiffs visited this home twice and the second time defendant Emma H. Hildebrandt assured them that they, defendants Hildebrandt, would complete the dwelling and finish it in like material and workmanship as the first story, would build a fence on two sides of the lot and landscape the lawn. At that time there was a fence along one side of the lot and the front lawn had been landscaped. No contract was entered into between the plaintiffs and defendants Hildebrandt at the time these representations were made to plaintiffs. Later C. R. Adams entered into a contract in writing with plaintiffs whereby plaintiffs agreed to purchase the property for the sum of $10,000, and to assume the obligation incurred for street improvements, amounting to $200. Defendant Coe A. McKenna & Company, through Adams, agreed to sell for that amount and to finish the dwelling, the following language being used:

"House to be finished as agreed, in a workmanlike and satisfactory manner. Lawn to be landscaped as agreed."

This contract is signed, "Coe A. McKenna Co., Agent." The signature was made by defendant

Adams. Following the signature of the defendant McKenna is the following sentence and signatures:

"I hereby agree to purchase the above property and to pay the price of Ten Thousand ($10,000) Dollars as specified above. Purchaser (Signed) E. R. Stark (Seal) Witnesses: (Signed) C. R. Adams, Address 657 E. 66th St. N."

Plaintiffs, at the time the contract was entered into, paid $200 as earnest-money. Later defendants Hildebrandt required a larger amount as earnest-money before they would approve the sale, whereupon, at the request of Adams, still acting in the name and for defendant McKenna, plaintiffs paid an additional $1,000. At that time plaintiffs suggested to Adams that they should have a contract in writing as to the work defendants Hildebrandt were to do in completing the dwelling and fixing up the yard as agreed. Adams insisted that it was not necessary, that they (referring to himself and McKenna) knew defendants Hildebrandt well, that defendant William Hildebrandt was a competent contractor, was honest and would complete the building as agreed. Whereupon plaintiff E. R. Stark said he was leaving it to McKenna and would hold him responsible for the work and manner of doing it.

It was agreed that plaintiffs should move into the house, which they did. Shortly after that time defendant Charlesworth requested plaintiffs to pay the entire purchase price because defendants Hildebrandt were having a little financial embarrassment and it would be to the advantage of plaintiffs to prevent any attachment or other lien attaching to the property. Plaintiffs claim .that they were to place the money with defendant McKenna in escrow and that the same was not to be expended or paid to defendants Hildebrandt until the house was completed to their satis-

faction.   The money was paid out soon after it was deposited by plaintiffs on mortgages and for material, and the balance later paid to defendants Hildebrandt, all done without the knowledge of plaintiffs. Plaintiffs made complaint about the condition of the house, the failure to build the fence or to landscape the lawn, soon after going into possession.   Repeated complaints were made and efforts continuously exerted for several months at the office of defendant McKenna.   Defendants Hildebrandt denied the terms of the contract as claimed by plaintiffs and alleged in their amended answer that the house was to be finished less expensively than as claimed by plaintiffs.   Their agreement in that regard was made with defendant Adams, who was acting all the time for Coe A. McKenna & Company.   No contract was made directly between plaintiffs and the Hildebrandts.   There is no claim that at the time defendants Hildebrandt made the representations to the plaintiffs that any agreement was entered into.   The agreement entered into between plaintiffs and defendants was later, and defendants were represented by Adams.

Errors assigned by plaintiffs were, first, the order granting a directed verdict and judgment of dismissal in favor of the defendant Charlesworth; second, refusal of the court to permit plaintiffs to amend their complaint during the course of the trial; third, refusal of the court to give instruction No. 3 requested by plaintiffs; fourth, receiving the verdict and rendering judgment thereon in favor of the Hildebrandts; fifth, giving instructions regarding the relation between defendants Hildebrandt, Adams and plaintiffs; refusing to give requested instructions, numbered 6, 7, 8 and 9.

Errors relied upon by defendants McKenna and Adams are 34 in number, 19 of which consist of refusing to give certain instructions requested by said defendants McKenna and Adams, 10 of which are based on instructions given and the other 5 assignments are based upon the court's ruling on the admission of certain testimony and the rejection of other proffered testimony.

AFFIRMED. REHEARING DENIED.

For appellants and cross-respondent Charlesworth there was a brief over the names of *Mr. Guy C. H. Corliss* and *Mr. Russell E. Seawall,* with an oral argument by *Mr. Corliss.*

For respondents and cross-appellants there was a brief over the names of *Messrs. Platt, Platt, Fales & Smith* and *Mr. Frank H. Reeves,* with oral arguments by *Mr. Harrison G. Platt* and *Mr. Frank H. Reeves.*

For cross-respondents Hildebrandt there was a brief over the name of *Messrs. Latourette & Latourette.*

COSHOW, J.—1. The order granting a directed verdict in favor of defendant Charlesworth must be sustained. There is no evidence pointed out by plaintiffs which tends in any degree to prove said Charlesworth to be other than an ordinary employee of defendant McKenna. All of his acts and conduct, relied upon by plaintiffs to prove personal liability on the part of said Charlesworth, show him to be acting as an agent of defendant McKenna, acting at all times within the scope of his authority and in the name of his principal. The action is one for damages, result-

ing from the breach of a contract.   The principal of defendant Charlesworth was not concealed from plaintiffs.   On the contrary, plaintiffs went to the office of defendant McKenna & Company and stated that they were dealing with McKenna & Company and would hold that firm responsible to them throughout the entire transaction.

It is elementary law that where an agent so acts he is not responsible for the delinquency of his principal.

"Where an agent acts on behalf of a disclosed principal, his acts and contracts, within the scope of his authority, are generally considered as the acts and contracts of the principal, and, in the absence of an agreement otherwise, involve no personal liability on the part of the agent to a third person, except in an action for tort."   3 C. J. 812, § 486; 21 R. C. L. 846, § 26.

There is no claim on the part of any party that the instant action is one founded on tort.   The relation between defendant McKenna and defendant Charlesworth is not that of joint venturers but simply that of principal and agent.

2–4. Plaintiffs also complain of the Circuit Court's refusal to allow them to amend their complaint during the trial.   One amendment had been allowed as the trial progressed and another request was made to amend the complaint in a minor particular, which the court denied.   Amendments during trial are allowed or disallowed in the discretion of the judge presiding. This court will not interfere with the rulings of the circuit judge in that regard unless there is a clear abuse of discretion.   There is no abuse of discretion in the instant case.

5. Plaintiffs also complain because the court gave an instruction, defining the building code of the City of Portland and the scope of its operation, to the effect that it had nothing in particular to do with the quality of the material or the accuracy of the workmanship, as long as the actual construction met the requirements of the code, and in said instruction also limited its operation to the completion of the building as it stood at the time the same was viewed by plaintiffs. In other words, so far as the language in the contract referring to the building code is concerned, it was limited in its operation to the completion of the upper story. It is our opinion that the court erred in limiting the operation of the building code to the upper story. According to the complaint the building, when completed, should conform to the requirements of that code. There was evidence upon that allegation. According to the testimony of plaintiffs the building was to be completed with similar material and as good workmanship as used in the completed portion thereof. Said code does not cover material and workmanship unless such affect the safety of the structure. This error was not harmful to plaintiffs. It did not contribute to the liability or nonliability of defendants Hildebrandt. Its effect was to limit the extent of damages.

6, 7. Plaintiffs also complain of an instruction given regarding the making of the contract. According to the complaint defendant Adams was an agent of both plaintiffs and defendants Hildebrandt. Plaintiffs claimed the terms of the agreement between them and defendants Hildebrandt to require certain material, a certain degree of workmanship and certain things to be done, while defendants Hildebrandt claimed the terms to be very different. Unhappily,

defendant Adams entered into the contract with defendants Hildebrandt. Adams also entered into the contract in behalf of the Hildebrandts with plaintiffs. As a result of this manner of dealing plaintiffs thought they had a contract with certain definite terms and defendants Hildebrandt thought they had a contract with other and different terms. The court properly laid this condition before the jury and instructed them that if they found that the contract was as plaintiffs testified it to be, then plaintiffs were entitled to recover such damages from defendants Hildebrandt as the jury believed from the evidence plaintiffs had suffered. On the other hand, if the contract entered into by defendants Hildebrandt was as testified to by them and they believed they had performed their contract, as they had a right to believe it to be, then they were not guilty of breaching their contract and could not be held in damages. That was one of the issues in the case; that is, what were the terms of the contract between plaintiffs and defendants Hildebrandt? These issues were fairly submitted to the jury and the jury returned a verdict in favor of the defendants Hildebrandt. Most of the arguments of plaintiffs pertinent to the verdict in favor of defendants Hildebrandt are interesting and persuasive as to the fact, but are not applicable to the law in the instant case. This court is bound by the verdict of the jury in favor of the Hildebrandts.

Plaintiffs complain of other errors of the court in refusing to give certain instructions requested by them. We have examined these requested instructions and believe that plaintiffs were not entitled to them, except to the extent and in the form given by the court.

8. Defendants McKenna and Adams do not discuss *seriatim* the 34 alleged errors assigned by them. The alleged errors are treated by them under 11 different points. Under their general argument defendants McKenna and Adams state:

"McKenna, Charlesworth and Adams did not assume to act as agents for Hildebrandt and wife, and plaintiffs knew that they did not assume to act as agents for Hildebrandt and wife. But plaintiffs' whole evidence proceeds on the theory that McKenna, Charlesworth and Adams were their agents in the transaction."

Defendants McKenna and Adams expressly admit the following allegation in the complaint upon which the action was tried:

"The defendant, Coe A. McKenna & Company, was then and now is a general real estate broker and agent, doing business under the assumed and registered trade name of 'Coe A. McKenna & Company'; the defendants, J. A. Charlesworth and C. R. Adams, were in the employment of said Coe A. McKenna in his said business, and aided defendant, Coe A. McKenna, *in acting for both plaintiffs and defendants in making the contract set out herein.*"

In the light of this excerpt from the second amended complaint, defendants McKenna and Adams cannot be heard now to say that they did not act as agent for defendants Hildebrandt as well as for the plaintiffs.

Under point 1 it is claimed by McKenna and Adams, hereinafter called the appellants, that there is no evidence that the minds of McKenna, Charlesworth and Adams met the minds of the plaintiffs upon the agreement that Hildebrandt and wife would finish the house in a certain way. However, there is evidence that the defendant Adams represented plain-

tiffs in arranging the details of the contract with defendants Hildebrandt and, in closing the deal with the plaintiffs, represented the defendants Hildebrandt. The written contract introduced in evidence and signed by McKenna & Company, as agents, was also signed by plaintiffs. Appellants then could not have been representing anyone in that written contract except defendants Hildebrandt. There was, then, evidence that the minds of appellants met the minds of plaintiffs regarding the terms of the contract between the plaintiffs and defendants Hildebrandt.

It is also in evidence that plaintiffs suggested to defendant Adams that he get a written contract with defendants Hildebrandt regarding the finishing of the house. Upon being assured by Adams that this was not necessary, plaintiffs said to Adams, "We will hold you responsible."

9. Under point 2, appellants claim that if defendant Adams is liable at all he is liable because guilty of fraud. Conceding that Adams was guilty of fraudulent representations, yet he may also be guilty of breaching his contract to complete the building, which he was purchasing for plaintiffs, in a certain definite manner which, according to the verdict of the jury, he failed to do.

10. Under point 3, appellants contend that the theory of the trial court that defendants Hildebrandt had one understanding of the terms of the contract while plaintiffs had another understanding was untenable. It may be conceded that the minds of plaintiffs and defendants Hildebrandt did not meet. For that reason the jury found in favor of the defendants Hildebrandt. Defendant Adams was representing defendants Hildebrandt when he agreed with plain-

tiffs upon the terms for completing the dwelling, building the fence and seeding the lawn. Defendant Adams exceeded his authority and doubtless for that reason, in part, defendants Hildebrandt were relieved from liability. On the other hand, Adams, having undertaken to complete that building according to the terms as specified by plaintiffs, is liable to plaintiffs wherein he failed to keep his contract.

11. Plaintiffs were not bound to return the property after discovering that defendants did not keep their contract with them. They were entitled to keep the property and sue for damages. This principle of law has been so often stated in this state that is seems unnecessary to cite authorities: *Kruse* v. *Bush,* 85 Or. 394, 397 (167 Pac. 308); *Billups* v. *Colmer,* 118 Or. 192, 200 (244 Pac. 1093).

12. If Adams is liable McKenna is also liable. Plaintiffs went to the offices of defendant McKenna. He was referred to Adams who was occupying a desk in McKenna's office. The evidence discloses that Adams was not, strictly speaking, an employee but worked with McKenna, receiving a part of the commission paid for services rendered by Adams. McKenna accepted and retained half of the commission paid in the deal between plaintiffs and defendants Hildebrandt. He cannot accept the benefits of the transaction and repudiate the parts thereof disadvantageous to him: *Dillard* v. *Olalla,* 52 Or. 126 (94 Pac. 966, 96 Pac. 678); *Rae* v. *Heilig Theatre Co.,* 94 Or. 408, 412 (185 Pac. 909).

Under point 5, appellants complain that evidence was received to the effect that the entire building was poorly constructed and made of poor material. It is claimed that the complaint charged only an under-

taking to complete the building in a good and work-manlike manner and that evidence of the condition of the entire building was outside the issues as framed by the pleadings. The complaint contains this allegation:

"About the month of August, 1923, the plaintiffs and the defendants entered into a contract whereby plaintiffs agreed to purchase from Emma H. Hildebrandt and William Hildebrandt, the said premises and dwelling house, when completed, and all the defendants agreed to complete the said dwelling house with first class material, light and water fixtures, hardware and other appurtenances of like quality and construction as the first story thereof, and in all particulars in accordance with the building code of the city of Portland. * * *"

13. To the extent that the house, when completed, departed from the standard fixed by the building code of the City of Portland for such structures, evidence was admissible under said complaint to show such deviation from the undertaking of appellants. It was not error, therefore, to admit evidence regarding defects in the building in violation of the building code of the City of Portland. In his instructions to the jury the learned trial judge explained the operation of the building code and limited its consideration to its proper scope. The jury was told that the quality of the material and the accuracy of the workmanship were not involved. Appellants cannot complain of the court's ruling upon the testimony and instructions in that regard.

14. Point 6 covers the contention of appellants that the court erred in denying their motion for a new trial. Conceding, but without deciding, that this court has a right to consider the question of whether

or not the verdict is excessive because showing passion or prejudice, we believe the court did not err in denying the motion for a new trial on both grounds presented. There was evidence showing very serious defects in the building. One of appellants' witnesses said the building was "rotten" and suggested the only way to correct the defect was by burning it down and building it over. One of the witnesses pointed out a number of departures from the standard fixed by the building code of Portland in very material matters. In the light of that testimony this court cannot say that the verdict of $4,500 is too large. It might be more than we would have returned had we been sitting as triers of the facts but we cannot say that it is so large that it shows passion or prejudice. The fact that the dwelling may have cost considerably more than $4,500 is not conclusive that it is worth that amount in its present condition.

15. Points 7 and 8 complain of instructions to the jury. These instructions were given to inform the jury of the relations between plaintiffs and appellants and the undertakings of the latter. We find no error in the court's instructions. Adams undertook to procure a house for plaintiffs completed and finished to their satisfaction. In his undertaking he was a co-adventurer with the defendant McKenna. From the view point of plaintiffs Adams and McKenna were partners: *Thimsen* v. *Reigard,* 95 Or. 45 (186 Pac. 559); *Huson* v. *Portland & Southeastern Ry. Co.,* 107 Or. 187 (211 Pac. 897, 213 Pac. 408). Adams was not the employee of McKenna but they worked together and, while not partners in a general sense, did sustain that relation in the enterprises in which they both engaged, and divided the profits. In in-

structing the jury along this feature of the case the court did not invade the jury's duties but submitted the facts to the jury correctly.

Point 9 is covered by what we have said under points 7 and 8. Point 9 covered a different phase of the case but is fully met by our holding that defendants Adams and McKenna are joint adventurers.

16. Under point 10 it is contended that the court erred in receiving parol testimony touching the terms of the contract and the persons liable thereunder. It will be remembered that the appellants were representing both plaintiffs and the defendants Hildebrandt in the transaction. The written contract does not set out in detail all of the terms of the contract but says the building shall be completed and certain other work done as agreed. Parol testimony was admissible, therefore, for the purpose of informing the jury what the agreement was as to the manner of completing the building and performing the other work agreed to be performed. Appellants can hardly be heard to say, in view of the fact that plaintiffs requested, or at least suggested, that they procure a written contract particularly describing the work to be done by defendants Hildebrandt in completing the house but were assured by Adams that such was unnecessary, that they are not bound by the contract because it is not in writing. In the light of the circumstances, including the fact that plaintiffs went to appellants, informed them that plaintiffs desired them to purchase a house for plaintiffs because plaintiffs were uninformed about that kind of business, had saved up money for the express purpose of buying a family home and did depend upon appellants to protect plaintiffs in every respect, we cannot look with sympathy now upon the contention of the appel-

lants in their claim that they were not to complete that house as the jury has found they agreed to do. The jury had the right to believe plaintiffs' testimony. That testimony shows that was the undertaking on the part of appellants, speaking through defendant Adams.

17. The last point is an argument to the effect that defendant Adams is not liable in this form of action. This claim is based upon the argument that if Adams is liable at all he is liable because he misrepresented his authority. The testimony, however, of plaintiffs was to the effect that the appellants, as well as defendants Hildebrandt, agreed to complete that house. This undertaking on the part of all of the defendants was made after plaintiffs had informed them that they were not sufficiently experienced to risk their own judgment in the selection of a home or in the construction of building to rely upon their ability to supervise the completion of the Hildebrandt dwelling. We know of no law that would prevent the appellants from assuming to act for plaintiffs in that behalf. There is an abundance of evidence that they did so assume to act. Having undertaken that task they would be held to the same liability and responsibility as they would in undertaking to perform any other lawful contract entered into by them. Having undertaken to complete the building and having failed to do it in material particulars, they were liable in such damages as a jury should find plaintiffs sustained by reason of their breach of the contract.

The Portland Realty Board, comprising some four hundred of the real estate brokers and property owners of the City of Portland, filed a brief through their attorney, *amicus curiae*. This brief raises the question of the statute of frauds. There is no issue

in the pleadings based upon the statute of frauds. The brief, *amicus curiae,* is very interesting and instructive but is purely academic so far as the instant case is concerned.

We find no reversible error and the judgment is affirmed.        AFFIRMED.    REHEARING DENIED.

RAND, C. J., and McBRIDE and BROWN, JJ., concur.