Argued and submitted January 25, affirmed March 24, 1980

# SPINNER,
*Respondent,*

*v.*

# STACY, et ux,
*Appellants.*

## (No. 78-7076, CA 14361)

608 P2d 609

Edward Ray Fechtel, Eugene, argued the cause and filed the briefs for appellants. With him on the briefs was Husband, Johnson, Fechtel & Goff, Eugene.

Harold R. Daughters, Eugene, argued the cause and filed the brief for respondent. With him on the brief was Wylde, Alpert & Daughters, Eugene.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

Plaintiff purchaser brought suit to enforce an earnest money agreement for the sale of a single family home and a triplex on two contiguous lots in the city of Springfield. The Circuit Court granted specific performance to the plaintiff. Defendants-sellers appeal, alleging that the plaintiff failed to prove the existence of a valid, legally enforceable contract. We affirm.

Defendants, husband and wife, listed the subject property for sale through a real estate company in July, 1978. Plaintiff, through his realtor, submitted an offer to purchase the property. After a series of counteroffers and further offers, plaintiff accepted the seller's second counteroffer.

The earnest money agreement was prepared by plaintiff's realtor under sellers' direction. It provided for the payment of $87,000 on an installment land contract. $20,000 was to be paid down and payments were to be $555 a month with 9% interest. There was also a provision for a $5,000 balloon payment in 24 months. The closing date was set at or before September 1, 1978, or as soon thereafter as financing documents could be prepared and marketable title delivered. The parties also agreed in principle that one of the two tax lots would be released early—which tax lot and under what conditions was not settled. The earnest money agreement simply provided, "provisions for release of one tax lot and building to be reviewed by [defendants'] attorney before establishing."

Defendants' attorney prepared a land sale contract in line with the earnest money agreement and providing for the release of one tax lot. It provided that, on or after January 1, 1982, the buyer could obtain a deed to either lot, but not both, by prepaying upon the balance due on the contract 60% of the principal then due if he selected a deed to the triplex and 40% if he selected a deed to the house. This contract was not acceptable to

the plaintiff and he communicated his ideas to defendants' attorney.

Defendants' attorney prepared a second contract which contained the same lot release provision but added a prepayment penalty if the plaintiff chose to exercise the release. This, too, was rejected by the plaintiff.

Plaintiff then submitted a contract he had prepared to defendants' attorney. Essentially, it was defendants' first contract with the parts objectionable to plaintiff eliminated. It provided that, on or after January 1, 1982, the buyer could obtain a deed to the triplex by reducing the principal balance owed under the contract to 65% of the purchase price or to the house by reducing the principal owed to 45%.

Plaintiff testified that, after learning from his agent that his version of the contract was unacceptable, he decided to call a partner of defendants' attorney as he had had no success dealing with defendants' attorney himself. The conversation took place sometime around the closing date proposed in the earnest money agreement. Plaintiff informed the partner that, although he felt the first contract drafted by defendants' attorney was not fair, he would accept it as written.[1] The partner agreed to look into the matter and call plaintiff back.

Plaintiff spoke to the partner of defendants' attorney again approximately ten days after the September 1st closing date. He asked if the defendants wanted more security or if they had decided not to sell. The partner attorney informed him that defendants did not want to sell the property. Plaintiff received a letter, dated September 14, 1978, from defendants' attorney stating that, as the time for closing had passed, the defendants considered the negotiations at an end.

---

[1] It is not clear from the record exactly when this conversation took place or whether the plaintiff informed the partner of his desire to accept the first contract then or during the later conversation. In light of our disposition of the case, it is not necessary to ascertain the exact factual setting.

Plaintiff then brought this suit for specific performance. The trial judge concluded that the contract rights had not expired on September 1st and that, when plaintiff expressed his desire to accept the first contract he was entitled to specific performance of it.

Defendants argue, first, that specific performance could not be decreed because the earnest money agreement was "too indefinite" to permit a court to fashion a decree with certainty. To the contrary, this agreement contained all the provisions required to make it enforceable: a description of the property, a certain price, and an agreed-upon form of financing. The remaining terms concerning a tax lot release was an ancillary matter not affecting the essential agreement. *See Howard v. Thomas*, 270 Or 6, 526 P2d 552 (1974). Defendants next argue that agreement on a tax lot provision was a condition precedent to entering into a binding agreement. We disagree. Release of the tax lot was a term solely for the benefit of plaintiff. He was entitled to waive it. *See Dan Bunn, Inc. v. Brown*, 285 Or 131, 590 P2d 209 (1979).

Defendants next argue that plaintiff's rejection of the contracts proposed by defendants' attorney terminated plaintiff's power of acceptance. We reject this argument since, under our view of the facts, the proffered contracts represented bargaining over the tax lot release provision and did not affect the existence of the underlying agreement.

Defendants further argue that the earnest money agreement expired by its own terms on September 1, 1978. We disagree. The agreement set the date for closing "on or before September 1, 1978, *or as soon thereafter as financing documents can be prepared and marketable title conferred.*" (Emphasis supplied.)

We agree with plaintiff that the land sale contract to be prepared in this case was the "financing document." The agreement clearly contemplates that the September 1, 1978, deadline could be extended for a

reasonable time. As we view it, defendants' refusal to proceed further occurred within that reasonable time; there was nothing more plaintiff could have done. This fact also answers defendants' next contention, *viz.*, that plaintiff's attempted communication of assent to the first contract proposed by defendants' attorney was ineffective. The inequitable conduct of defendants and their attorney relieved plaintiff of an obligation to do more.

Defendants also argue that plaintiff failed to show that he was ready, willing and able to perform. As we read the record, defendants waived proof on this point at trial. The decree of the trial court is affirmed.[2]

Affirmed.

_____

[2] Defendants make other contentions, but they are not materially different from those previously discussed.