Argued and submitted November 3, 1980,
modified and remanded April 7, 1981

## SCHREIBER,
### *Respondent,*
*v.*
## KARPOW,
### *Petitioner.*

(No. 35036, CA 14977, SC 27219)

626 P2d 891

David G. Frost of Frost & Hall, Hillsboro, argued the cause and filed briefs for petitioner.

Don Winfree, Portland, argued the cause for respondent. On the brief were Frank Noonan and Winfree & Noonan, Portland.

Before Tongue, Presiding Chief Justice, and Howell,** Lent, Linde, Peterson, and Tanzer, Justices.

PETERSON, J.

**Howell, J., retired November 30, 1980.

PETERSON, J.

This is a suit in equity for specific performance. Plaintiff buyer prevailed in the trial court. The Court of Appeals modified the trial court decision in a respect not relevant to this opinion and otherwise affirmed the lower court. We granted review to consider whether the trial court and Court of Appeals erred in imposing the cost of constructing an access road upon the defendant seller.

## THE FACTS

Both the plaintiff and the defendant are experienced in real estate matters, plaintiff as a building contractor and defendant as the owner of numerous commercial and residential properties, and as the purchaser and developer of properties. In 1971, defendant bought approximately eight acres of undeveloped land in Yamhill County. At that time the land was zoned "rural-residential." She employed an engineer to survey the land, to "set off four one-acre parcels on the southerly portion," and to submit a subdivision plan. In 1972, the engineer undertook to obtain subdivision approval, which required approval of septic tanks for subsurface sewage disposal and approval of water facilities. Septic tank approval was obtained, but processing was discontinued until the completion of a water system by the LA Water Co-op. The water system was completed in 1974. In August of 1974, Yamhill County adopted a comprehensive plan which designated the area as "Agricultural-Forestry, Large Holding," with a 20-acre minimum lot size.

In November, 1974, defendant listed two parcels of the Yamhill County property with a real estate agent. The defendant informed the realtor that the land was zoned residential and that it had "approvals."[1] In February, 1975, the plaintiff contacted the realtor about locating some property upon which to build a new house. The realtor informed the plaintiff of the defendant's listing, assuring him that the property was zoned residential and was

---

[1] The realtor testified that:

"A Approvals mean, number one, that you have State approval for subdivision and that your building permits will be available when you sell them to a client."

"buildable." On February 22, 1975, plaintiff and defendant entered into an earnest money agreement for the sale of the land. The price agreed on was $14,900. The earnest money agreement described the property as "Parcel #6, consisting of 1.512 acres M/1, and Parcel #5 consisting of 1.429 Acres M/1 * * *" and contained this provision: "This transaction subject to purchaser obtaining septic tank approval, and building permit."

Soon thereafter, plaintiff applied for and was denied a building permit. He was informed that the land was not zoned residential, that only a preliminary subdivision plat had been filed. The plaintiff called the realtor and told the realtor of the problem. The realtor then called the defendant. The defendant testified that she told the realtor that she would get the zone and plat subdivision "taken care of." She hired a land use consultant to accomplish this, and eventually succeeded in having the land classified as low density residential by an ordinance enacted on September 16, 1975. An appeal was taken to the Land Conservation and Development Commission, which upheld the classification on May 5, 1976.

On August 25, 1976, defendant's attorney wrote plaintiff:

"At the time the earnest money agreement was entered into, I am sure that both you and Mrs. Karpow felt that it was possible to comply with the requirements of the * * * agreement * * *.

"It seems obvious that there was a mutual mistake of fact as to either party to the transaction being able to meet the terms of the agreement as required by the earnest money agreement. * * *

"* * * * *.

"Therefore, based upon the reasons set forth above, Mrs. Karpow hereby rescinds the earnest money agreement * * *."

Plaintiff refused to accept the defendant's claim of rescission. The rescission letter generated an exchange of correspondence between the parties, which continued through 1977. In the meantime, the defendant continued her efforts to obtain subdivision approval.

Defendant submitted a revised subdivision plat in December, 1976, following which the county planning staff

raised, for the first time, a new requirement that a road be built. Defendant then moved for a variance, asking that the requirement that the road be built to "urban standards" be waived, and that approval be given for construction of a road to a less onerous standard. The Planning Staff denied defendant's application, but the Board of Commissioners approved the variance application on November 9, 1977. In June, 1978, the standards and specifications for road construction were finally agreed upon, and on June 20, 1978, the county advised the defendant:

"As soon as we receive a final subdivision plat showing the above stated requirements on it, the subdivision will be approved. When approval is certified by the Planning Director, you will have thirty (30) days to record it in the County Clerk's office."

The evidence shows that if a bond were filed guaranteeing the construction of the road to the standards, the subdivision would also have been approved. Plaintiff brought a suit for specific performance on May 2, 1978.

## THE PLEADINGS

The complaint alleged the execution of the earnest money agreement (a copy of which was appended to the complaint), the plaintiff's willingness to perform, that defendant had demanded performance, that defendant refused to perform, and concluded with a prayer reading as follows:

"(1) That defendant specifically perform the sale agreement and receipt for earnest money by performing all conditions precedent requisite to the making, execution of and delivery to plaintiff of a conveyance and deed in fulfillment of and in compliance with the sale agreement and receipt for earnest money;

"(2) That defendant make, execute, and deliver to plaintiff a conveyance and deed in fulfillment of and in compliance with the sale agreement and receipt for earnest money;

"(3) That plaintiff have judgment against defendant for plaintiff's costs and disbursements, and for the further sum of $4,000.00 or a larger sum which the court finds reasonable, as and for plaintiff's attorneys fees;

"(4) That the court grant such other relief which may be just and equitable."

The defendant admitted the execution of the contract, denied the allegations relating to the plaintiff's request for specific performance, and affirmatively alleged various defenses including mutual mistake and laches.

## RULINGS OF THE TRIAL COURT AND COURT OF APPEALS

The trial court rejected the defendant's affirmative defenses, decreed that plaintiff was entitled to specific performance, and that "* * * *plaintiff* shall forthwith do all things necessary to secure the approval of the subdivision including the construction of the access road * * * *with the cost thereof to be chargeable to the defendant* * * *."[2] (Emphasis added.) The Court of Appeals affirmed the trial court's decree of specific performance, and also required the defendant to pay for the cost of road construction:

"The earnest money agreement did not contain a specific provision regarding construction or costs of an access road. However, the contract provided: 'This transaction subject to purchaser obtaining septic tank approval, and building permit.' Plaintiff had a right to insist on the terms of the contract *(Wittick v. Miles,* 274 Or 1, 545 P2d 121 (1976)), which included building permit approval. The evidence shows that an access road was necessary to obtain a permit. To impose the cost of the road on defendant under the prayer for general relief was appropriate under the evidence presented. *See Stan Wiley v. Berg,* 282 Or 9, 21, 578 P2d 384 (1978). The variance in the property description was a consequence of the subdivision and road approval and was necessary to protect the plaintiff's rights." 47 Or App at 243.

The only claim asserted by the defendant in her petition for review is that the trial court and Court of Appeals erred in imposing the cost of building the road upon the defendant. She does not seek reversal of the decree ordering specific performance. Thus, the only question before us is whether the defendant should bear the cost of building the access road. The relevant facts, insofar as the resolution of this issue is concerned, are without dispute.

---

[2] The Court of Appeals opinion erroneously states that the trial court decree required the *"defendant* * * * to secure final approval of the subdivision, including the construction of an access road, at her expense." *Schreiber v. Karpow,* 47 Or App 237, 239, 614 P2d 129 (1980). (Emphasis added.)

## DISCUSSION

The case turns upon the meaning of the clause, "This transaction subject to purchaser obtaining septic tank approval, and building permit." The defendant testified that he inserted the provision out of an excess of caution:

> "* * * I put that on every lot I bought, sewer permit and building permit so you couldn't get hooked into an illegal lot is the purpose of that."

■■ This provision was not an undertaking by the defendant to secure approval of the building permit. The condition was clearly for the benefit of the purchaser. Whether such provision be deemed a condition precedent or condition subsequent, it is clear that the legal effect of the provision was to permit the plaintiff to avoid the contract and obtain the return of his down payment if he could not obtain a building permit. *See McDonald v. Cullen,* 277 Or 35, 40, 559 P2d 506 (1977); *The Simms Co. v. Wolverton, et et al,* 232 Or 291, 297, 375 P2d 87 (1962). *Compare, Columbia Christian College v. Commonwealth,* 286 Or 321, 335, 594 P2d 401, *rehearing denied* 286 Or 669, 596 P2d 554 (1979). But the plaintiff opted to enforce the contract, and his filing of a complaint for specific performance reflects his election to affirm the contract rather than to disaffirm the contract and rescind.

■ The contract between the plaintiff and the defendant is on a printed earnest money form. The contract says nothing as to the zoning of the property, whether subdivision approval has been obtained, whether the lots were "buildable," or the need for a road. The contract, by its own terms, required the defendant to convey no more than the described property, with "good and marketable title." A "marketable title" refers to the state of title of the property as derived from the record of conveyances or other public record. "It means that the title must appear of record, and not rest in parol." *Lockhart v. Ferrey,* 59 Or 179, 183, 115 P 431 (1911).

Had the defendant made no appearance and had the plaintiff won by default, under the contract appended to the plaintiff's complaint, and under the complaint, it is questionable whether the plaintiff would have been

entitled to any more than a deed to the described property. The plaintiff sought no damages in addition to specific performance, nor did the plaintiff seek specific performance with abatement. At no time during the trial was any request made or issue raised as to the defendant's obligation to pay for the road.

### Effect of Defendant's Misrepresentation and Subsequent Undertaking

The foregoing analysis omits any consideration of either (1) the defendant's representation that the property was "buildable" and had the "approvals" or (2) the defendant's later effort to get the zoning and subdivision "taken care of." As to the defendant's representation, we note that the plaintiff's complaint contains neither any allegations of misrepresentation nor any request for damages or an abatement of the purchase price on account of the fact that the lots were not "buildable."[3] As for the defendant's subsequent attempt to obtain zoning and subdivision approvals, we question whether her attempt amounted to a modification of the contract to the effect that she would be bound to do so. She was under no contractual obligation to do so, and we doubt that plaintiff would have had any additional cause of action against her had she declined to do so.

■■ When the problem initially arose, the plaintiff could have (1) rescinded because of the misrepresentation

---

[3] Some courts refuse to decree specific performance with abatement unless the alleged deficiency relates to an actual shortage of land or defect in title. *See* Annotation 7 ALR 2d 1331 (1949), and Note, 40 Harv L Rev 476 (1927). Whether specific performance with abatement would have been denied in this case on the theory that there was no defect in title is not before us, and our decision in this case does not turn on that issue.

"The right to specific performance with an abatement has been limited under one line of cases to those involving a defect in title or deficiency in quantity. These refuse to apply the rule to matters collateral to the conveyance, such as a misrepresentation of rents, a misrepresentation of the availability of sewer connections or a mistake as to the effect on the property of a zoning ordinance. In these cases the purchaser could have specific performance, though possibly without abatement; and could probably have established other rights, e.g., recission [sic], damages against the purchaser or a successful defense against an effort by the seller to enforce the contract. For this reason Professor Corbin criticizes these cases for refusing to dispose of the entire matter in equity. * * *" (Footnotes omitted.) Friedman, Contracts and Conveyances of Real Property 810, § 12.2 (3d ed 1975).

of the seller, *Gardner v. Meiling,* 280 Or 665, 674, 572 P2d 1012 (1977), or because of the failure of the contractual condition, *The Simms Co. v. Wolverton, et al,* 232 Or 291, 297, 375 P2d 87 (1962); (2) sued for damages for breach of contract or for misrepresentation, *see Crahane v. Swan,* 212 Or 143, 157, 318 P2d 942 (1957); *Stark v. McKenna,* 124 Or 332, 346, 263 P 391 (1928); *Freedman v. Cholick,* 233 Or 569, 572, 379 P2d 575 (1963); II Williston, Contracts 525, § 1399 (3d ed 1968); or (3) sued for specific performance. Plaintiff ultimately chose to sue for specific performance of the contract as originally written.[4] His rights under the contract were not enlarged, however, by reason of his decision to wait until the subdivision problem was resolved.

Later, after the property had increased in value and after the defendant, unsuccessfully as it turns out, sought to rescind, the plaintiff opted to sue for specific performance. By this time, all that remained to be done (according to the Yamhill County Planning Director) was either to file a plat showing that the road had been built or to post an appropriate "* * * surety that the road will be built * * *."

■■ As stated above, the contractual condition was included in the contract at the request of and for the protection of the buyer. He had the right to waive that condition and his filing of the suit for specific performance operated to waive the condition.[5] But there is a total absence, in the pleadings and in the evidence, of any request for damages or abatement of the purchase price, or any claim that the contract was orally modified so as to bind the defendant contractually to obtain zoning and subdivision approval.

Finally, we note that there is no suggestion by the plaintiff and there is no evidence in the record that either

---

[4] The parties made a later addendum to the contract which related to the cost of some water meters. This addendum is not relevant to any issue before this court.

[5] *See Dan Bunn, Inc. v. Brown,* 285 Or 131, 143, 590 P2d 209 (1979) (dicta); *Spinner v. Stacy,* 45 Or App 483, 487, 608 P2d 609 (1980); *LaGrave v. Jones,* 336 So 2d 1330, 1332 (Ala 1976). Every specific performance with abatement case reflects, in a sense, a waiver by the buyer of full performance, with damages (by way of abatement) for the deficiency.

when the contract was executed or when the earnest money agreement was so modified, it was contemplated by the parties that a road would have to be built. The first suggestion that a road might be required was in 1977, nearly two years after the original contract was executed.

■ The plaintiff argues that (1) when defendant undertook to obtain the necessary approvals, she undertook to do everything necessary to obtain the approvals, and (2) that under the prayer for general relief, the imposition of these costs was appropriate. As to the second proposition, the rule is well settled that

> "It is elementary that in a suit in equity, and under a complaint with a prayer for general relief, as in this case, a court of equity will determine with which party the equities are and may then shape a decree according to the equities of the case." *Stan Wiley v. Berg,* 282 Or 9, 21, 578 P2d 384 (1978).

■ ■ But it is not proper, under the guise of incidental relief, to impose an obligation which was not within the contemplation of either party. To the extent that the subject property, with a road, is worth more by reason of the existence of a road thereon, under the trial court decree and the opinion of the Court of Appeals the plaintiff would get more than he bargained for. Looking at the contracts in light of the contemplation of the parties, the granting of such relief effectively would rewrite the contract in violation of the well settled rule that "[a]lthough the powers of an equity court are broad, they do not permit the court to rewrite the contract for the parties." *Usinger v. Campbell,* 280 Or 751, 755, 572 P2d 1018 (1977). *Accord, Wikstrom v. Davis,* 211 Or 254, 268, 315 P2d 597 (1957).

We therefore remand to the trial court for entry of an appropriate decree in accordance with the opinion of the Court of appeals as modified herein, to-wit: the defendant shall deliver into escrow an appropriate deed and other necessary documents; the plaintiff shall deposit an appropriate amount of cash; escrow costs shall be shared equally, the transaction to close pursuant to the original decree as modified by this court and the Court of Appeals.

Costs to neither party in this court.