Argued June 22; reversed and remanded July 15; petition for
rehearing denied September 28, 1948

## REDDICK *v.* MAGEL
195 P. (2d) 713; 197 P. (2d) 683

*John D. Galey,* of Sweet Home, argued the cause for appellant. With him on the brief were Galey & Galey, of Sweet Home.

*Bartlett F. Cole,* of Portland, argued the cause for respondent. With him on the brief was R. N. Kavanaugh, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, KELLY, BAILEY and HAY, Justices.

ROSSMAN, C. J.

This is an appeal by the plaintiff from a judgment in favor of the defendant which was entered in an action instituted to recover damages in the sum of $1,200 on account of the defendant's alleged breach of a contract signed by the parties March 26, 1946. The

judgment is based upon findings of fact and conclusions of law.

The assignments of error are:

"The court erred in making finding of fact Number Six."

"The court erred in entering judgment for the defendant, for the findings of fact do not support the conclusion of law nor the judgment."

"The court erred in not entering judgment for plaintiff."

A copy of the aforementioned contract follows:

"March 26, 1946

"RECEIVED OF E. C. Reddick, as purchaser, the sum of $200.00 as earnest money and in part payment of the purchase of the following described property situated in Multnomah County, Oregon: Portland. 2631 S. E. 43. Has 60 days to Sell. 3956 N. E. Couch. which premises have this day been sold to said purchaser for the sum of $6500.00, payable as follows: $200.00 above receipted for and $6300. upon acceptance of title and delivery of good title, balance . . . Subject to acceptance by owner, who shall furnish abstract or title insurance showing good and marketable title. Sale to be completed on or before_____ If owner does not approve sale, or cannot furnish marketable title within reasonable time, earnest money herein receipted for shall be refunded, but if owner approves sale and title is marketable and the purchaser fails to complete purchase as above specified, the earnest money herein receipted for shall be forfeited to the undersigned agent to the extent of agreed upon commission, and residue to owner as liquidated damages. Possession of the above described premises is to be delivered to the purchaser immediately on delivery of the deed or contract above mentioned or on _____, 19_____, or as soon thereafter as

existing laws and regulations will permit removal of tenants, if any. Time is the essence of this contract.

------------------------------------------- Agent

-------------------------------------------

"I hereby agree to purchase above property upon above mentioned terms and conditions.

(Purchaser)   /s/ E. C. Reddick

Address 3956 N. E. Couch

Phone VE 3640

"I approve and accept the above sale and agree to above mentioned terms and conditions and agree to pay forthwith to said agent a commission of $------------ for services rendered in this transaction.

(Owner)   /s/ Jack Magel."

The contract was written by hand upon a printed option form. It will be observed that after the name "Portland", near the beginning of the instrument, are two street addresses. One is the property which was the subject matter of the contract, and the other is the plaintiff's address.

The complaint alleges and the answer admits that the parties signed the above-quoted contract. The answer makes no averment or intimation of fraud, deceit, mistake or incompleteness in the writing. The plaintiff alleges and the defendant admits that the former paid $200 earnest money concurrently with the signing of the contract. The complaint says:

"On or about May 21, 1946, plaintiff demanded of the defendant that the defendant furnish an abstract or title insurance showing good and marketable title as provided in said contract, which the defendant then, and at all times since, has failed and refused to do.

"At the time of said demand, and at all times

since, plaintiff has been ready, willing and able to perform all of the provisions of said agreement on his part to be performed.''

The answer alleges:

''On the 26th day of March, 1946, Plaintiff and Defendant entered into the following written agreement: * * * ''

Then follows by quotation a copy of the agreement of March 26, 1946, which is set forth in a preceding paragraph of this opinion. The fourth paragraph of the answer avers:

''On or about the 18th day of May, 1946, Plaintiff notified Defendant that he would pay Defendant the balance of the purchase price of said premises in the sum of Six Thousand Three Hundred Dollars ($6,300.00) upon the delivery of possession thereof but only upon the express condition that possession be delivered within about three days thereafter.

''Defendant under said agreement was not obligated to deliver possession within about three days * * * ''

The first finding of fact recites:

''On March 26, 1946, the plaintiff and defendant executed, signed, and delivered in writing the following memorandum, to-wit: * * * ''

Then follows a copy of the agreement of March 26.

The fifth finding states:

''On or about May 18, 1946, plaintiff notified the defendant that he would pay the defendant the balance of the purchase price of said premises in the sum of $6300.00 upon delivery by the defendant to the plaintiff of evidence of marketable title to said premises in the defendant, and without any

other condition whatsoever. The defendant did not at said time nor at any time deliver to the plaintiff evidence of marketable title to said premises in the defendant.''

The sixth finding follows:

''There was no meeting of the minds of the parties as to the terms of the alleged contract of purchase, and, therefore, no agreement between them; that defendant had promised to deliver possession within 30 days after completion of the purchase of said property, but that plaintiff demanded immediate possession upon completion of said purchase and that plaintiff, therefore, failed to accept or perform in accordance with defendant's offer.''

The conclusion of law is:

''There was no binding agreement between the parties hereto, and that Defendant is entitled to a Judgment herein that Plaintiff take nothing, dismissing Plaintiff's Complaint, and for his costs and disbursements herein incurred.''

It is seen from the pleadings that the parties are agreed that on March 26, 1946, they entered into the contract which is the foundation of this action. As we said, there is no contention that the execution of the contract was improperly induced. There is no averment that the contract is incomplete nor that the relationship of the parties was subject to an additional agreement.

According to evidence presented by the defendant, he and the plaintiff indulged in discussion prior to the signing of the agreement in regard to the amount of time which would be available to the defendant to vacate the premises after the plaintiff had satisfied himself concerning the title and had paid the balance

of the purchase price, $6,300. That evidence was variable. By reverting to the quoted agreement, it will be seen that it specified the time for delivery of possession. The defendant's brief, referring to this evidence, says:

> "The written contract is more favorable to the defendant than the alleged verbal agreement. * * * The contract then is more favorable to defendant than the verbal agreement testified to by defendant."

■ We think that evidence tending to show a contemporaneous oral agreement inharmonious with the written agreement was inadmissible. Our reasons are: (1) The answer alleged as the agreement of the parties identically the same contract which was set forth in the complaint, and mentioned no other agreement; (2) sections 2-214 and 2-909, subd. 6, O. C. L. A., which are, respectively:

> "When the terms of an agreement have been reduced to writing by the parties it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except * * *."

> "In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law: * * *.

> "(6) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein; * * *."

As we saw from our quotations from the defend-

ant's brief, the defendant states that the contract which the parties signed May 26, 1946, is more favorable to him than the purported oral agreement which would have granted him only thirty days in which to vacate the premises. The written agreement says:

> "Possession of the above-described premises is to be delivered * * * as soon thereafter as existing laws and regulations will permit removal of tenants."

There were introduced in evidence the regulations pertaining to defense-rental areas promulgated by the Office of Price Administration. Under them a tenant has at least three months to vacate. According to our understanding of the defendant's position, he does not claim that the effect of the evidence which he presented in contravention of the written instrument was to modify the latter; but to prove that the minds of the parties never met. As we have said, we think that evidence was inadmissible and that it must be denied effect.

■ The quotation which we made from the pleadings renders it clear that the following part at least of the conclusions of law is in error:

"There was no binding agreement between the parties." The complaint, answer and Finding No. 1 state that on March 26, 1946, the parties executed the agreement which is copied in a preceding paragraph of this opinion. Hence, we start from the premise that the parties were bound by that agreement.

Finding No. VI, as we have seen, says:

> "There was no meeting of the minds of the parties as to the terms of the alleged contract of purchase, and, therefore, no agreement between

> them; that defendant had promised to deliver possession within 30 days after completion of the purchase of said property, but that plaintiff demanded immediate possession upon completion of said purchase.''

If the plaintiff's expressed readiness to complete the purchase by paying the balance of $6,300 was subject to an unwarranted condition, this action can not be maintained, but Finding No. V, which refers to the plaintiff's expressed readiness to pay the defendant the balance of $6,300, says that the offer was made ''without any other condition whatsoever.'' In other words, when the plaintiff told the defendant that he was ready to pay the balance, he made only one demand, and that was that the defendant furnish evidence of marketable title. It is agreed that the contract authorized the plaintiff to make that demand.

■ Even if the plaintiff expressed readiness to pay the balance of the purchase price had been subject to an improper condition, that circumstance could not have justified the entry of the finding, ''There was no meeting of the minds of the parties as to the terms of the alleged contract,'' nor of the conclusion of law, ''There was no binding agreement between the parties.''

We are satisfied that the agreement previously quoted was in effect and governed the rights of the parties. According to 3 Am. Jur., Appeal and Error, page 463, § 898:

> ''Where findings of fact are so inconsistent that it is impossible to harmonize them, it is the duty of the appellate court to accept those which are most favorable to the appellant.''

■ We conclude that when the plaintiff, on May 18,

told the defendant that he was ready to pay the balance of the purchase price he exacted only one condition, and that was that the defendant furnish the plaintiff with evidence showing that his title was marketable. Under the contract, the defendant was required to furnish the plaintiff with an abstract of title or title insurance showing marketable title. By adverting to the fifth finding, it will be observed that it says:

"The defendant did not at said time nor at any time deliver to the plaintiff evidence of marketable title to said premises in the defendant."

It is our belief that the plaintiff sought to comply with the contract and demanded of the defendant that he also comply with it. We are satisfied that the defendant, instead of complying with the agreement, breached it. We sustain assignments of error I and II.

██ The measure of damage is the value of the property less the unpaid portion of the purchase price. The plaintiff swore that the market value of the property at the time of the breach was $7,500. The defendant testified that shortly after May of 1946 he sold the property for $7,000 and that that sum represented its value. The plaintiff's brief says: "Appellant therefore respectfully submits that judgment should be entered by this court in his favor against the respondent for his damages of $700.00." We sustain the third assignment of error, and remand the cause to the Circuit Court with instructions to enter judgment in favor of the plaintiff in the sum of $700.00, together with costs and disbursements.

Submitted on respondent's Petition for Rehearing, August 3, 1948.

DENIED.

ROSSMAN, C. J.

The petition for a rehearing of this cause submits the following contention:

"The court erred in holding that where findings are conflicting, the court will adopt those favorable to the appellant for the purpose of entering a final judgment."

The brief which accompanies the petition states:

"The Supreme Court opinion, page 5, says: 'According to our understanding of the defendant's position, he does not claim that the effect of the evidence which he presented in contravention of the written instrument was to modify the latter, but to prove that the minds of the parties never met.' The defendant does not contend that the evidence presented by him to the effect that the plaintiff would not consummate the sale unless he got possession was for the purpose of showing that the minds of the parties never met, but was for the purpose of showing that the plaintiff was unwilling to consummate to deal under the terms of the contract in so far as the contract related to possession."

In view of the fact that the defendant claims in the language just quoted that we misinterpreted his position, we shall deem that his position throughout has been as stated in the language just quoted from the brief. That being true, we withdraw the part of our opinion which deals with conflicting findings, including our quotation from 3 Am. Jur., Appeal and Error, p. 463, § 898. We wish our original opinion to be read as though it said nothing upon the subject of conflicting findings.

We have read again the transcript of evidence. The petition for rehearing and its accompanying brief contend that the evidence shows that when the plain-

tiff offered to pay the balance owing upon the contract he made a demand to which he was not entitled, that is, that he be given immediate possession of the property. It is the defendant's position that the plaintiff was unwilling to pay the balance of the purchase price unless he were given immediate possession.

Our original opinion states that the rights of the parties are governed by the agreement which they signed March 26, 1946. That writing is quoted in our original decision. The petition for a rehearing takes no issue with our statement that the agreement of March 26, 1946, governs the rights and duties of both plaintiff and defendant. By reverting to our quotation of that instrument, it will be seen that it says:

"Possession of the above-described premises is to be delivered to the purchaser immediately on delivery of the deed * * * or as soon thereafter as existing laws and regulations will permit removal of tenants."

It is conceded that the regulations promulgated by the Office of Price Administration govern and that under those regulations the tenants of the property were entitled to continue in occupancy for three months following delivery of the deed.

The findings of fact state:

"On or about May 18, 1946, plaintiff notified the defendant that he would pay the defendant the balance of the purchase price of said premises in the sum of $6,300.00 upon delivery by the defendant to the plaintiff of evidence of marketable title to said premises in the defendant * * * ."

The defendant does not contend that that finding was unwarranted, and the evidence clearly justified its entry. The finding just quoted continues as follows: "and without any other condition whatsoever."

■ Finding of Fact No. 6 says:

"There was no meeting of the minds of the parties as to the terms of the alleged contract of purchase, and, therefore, no agreement between them; * * * ."

That finding, of course, will have to be disregarded. It is contrary to the conceded facts. The finding continues:

"Defendant had promised to deliver possession within 30 days after completion of the purchase of said property, but the plaintiff demanded immediate possession upon completion of said purchase and that plaintiff, therefore, failed to accept or perform in accordance with defendant's offer."

Under the contentions urged in the petition for a rehearing, we deem the finding just quoted and the one which says "and without any other condition whatsoever" crucial. They, of course, contradict each other. The finding that "the plaintiff demanded immediate possession" runs counter, in part, to an averment of the answer which says:

"On or about the 18th day of May, 1946, plaintiff notified defendant that he would pay defendant the balance of the purchase price of said premises in the sum of $6,300.00 upon the delivery of possession thereof, but only upon the express condition that possession be delivered within about three days thereafter."

We shall now determine whether the evidence indicates that the plaintiff's tender of the balance of $6,300.00 was subject to a condition that he receive immediate possession of the property. If substantial evidence supports the finding previously quoted that "the plaintiff demanded immediate possession upon

completion of said purchase," the finding must be sustained, and in that event the attacked judgment is free from error.

In order to prove that the defendant breached the agreement of March 26, 1946, the plaintiff, during the trial, depended in part upon (1) the admission made in the answer that "on or about the 18th day of May, 1946, plaintiff notified defendant that he would pay defendant the balance of the purchase price of said premises in the sum of Six Thousand Three Hundred Dollars"; and (2) the following letter which the defendant received from the plaintiff's attorney on or about May 21, 1946:

> "We wish hereby to advise you that we have been retained by E. C. Reddick to represent him in connection with his purchase of the property at 2631 S. E. 43d, Portland, Oregon.
>
> "On March 26th, he paid you earnest money in the amount of $200.00, and at that time you entered into a binding contract to sell the premises to him for $6500.
>
> "Among other things, the contract provided that you furnish abstract or title insurance showing good and marketable title. We are informed by him that you have failed and refused so to do.
>
> "Demand is hereby made that you comply with your contract in that you furnish such evidence of title forthwith. For your information, may we advise you that our client is insisting that this transaction be closed, and that in the event you fail to go forward with it, he intends to sue you for damages."

The occupants of the property were the defendant's daughters and two sons-in-law. Each paid $15.00 per month rental. On the day when the plaintiff tendered payment he called upon one of the sons-in-law and

thereupon, according to the plaintiff, the following conversation took place:

"A. I told his son-in-law that if he couldn't find a place—or I asked him about it first, and he said whatever Mr. Magel said or done was all right with him. I said, 'If you can't find a place, I won't kick you out, I will make room; because the downstairs is all we need anyway.'

"Q. That conversation was with his son-in-law?
"A. Yes, it was.

"Q. What other conversation, if any, did you have with Mr. Magel?
"A. Nothing, only that he refused to get in and make title insurance to me."

■ The foregoing facts indicate that the plaintiff timely tendered the balance owing upon the purchase price and asked for nothing except a deed and evidence of marketable title. It is agreed that both of those demands were warranted and that the defendant did not meet them.

The defendant, in order to prove that the plaintiff, in addition to demanding a deed and evidence of marketable title, also demanded immediate possession, offered evidence, which we shall now review.

The defendant swore that before the agreement of March 26, 1946, was signed, he told the plaintiff that he could not give possession until thirty days after the plaintiff had paid the balance of the purchase price. He swore more than once that it was agreed that he should have the thirty-day period just indicated to vacate the property. We think that the terms of the agreement which the parties signed March 26, 1946, prevail and that the tenants could not have been forced to vacate for three months. We mentioned the testimony given by the plaintiff concerning the purported

thirty-day provision only because it has a bearing upon other evidence which we shall presently delineate.

One of the aforementioned sons-in-law was Albert Hollway, who became a witness for the defendant. Mr. Hollway testified that on Saturday, May 18, 1946, that being the day the plaintiff told the defendant that he was ready to complete the purchase, the plaintiff asked him (Hollway) if he (plaintiff) could have possession on the following Monday. We quote from Hollway's testimony:

"Q. Could you be any more specific than that?

"A. He said 'Could you be out by Monday?—that was a Saturday night. Of course, I couldn't move on Sunday; Monday would be the day.

"Q. Who was present when Mr. Reddick came in and made this request?

"A. My brother-in-law."

Upon cross-examination the following occurred:

"Q. When you say that Mr. Reddick demanded possession, did he demand it or did he simply ask if you could arrange to give it?

"A. Well, he requested it more or less; it wasn't exactly a demand. He said to—to sell the house, he had to have immediate possession.

"Q. He told you that there was a deal depending on that? Did he tell you to move?

"A. He asked if we could be out by Monday.

"Q. When you said no, what did he say?

"A. I didn't say no. I said, 'Well, I don't know now. By rights we could have thirty days; I understand it to be thirty days; my father-in-law told me that.'

"Q. And you disagreed as to when the thirty days began to run?

"A. Yes.

"Q. What else was said?

"A. Well, he was going to see my father-in-law.

"Q. You didn't have any further conversation with him at that time?

"A. Well, we more or less discussed it.

"Q. But he didn't order you out of the house?

"A. No, he couldn't do that.

"Q. Well, he didn't even try, did he?

"A. He said to close a deal, he would have to have immediate possession. It wasn't exactly an order, no; I wouldn't call it an order. He isn't—he asked could we be out. That is the words he used."

It will be observed that the witness swore that the conversation described by him occurred on Saturday, May 18. After the plaintiff had had his conversation with Mr. Hollway he called upon the defendant. We now quote from the latter's testimony:

"Mr. Reddick came in and says, 'Well, Jack, I have got the money to pay you off.' I says 'That's fine.' He says 'I have to have immediate possession.' 'Well,' I says, 'that's out.' And he says 'Well, if you can't give me possession, I will have to move in with you.' I says 'That's out too.' I says 'Our agreement was 30 days after final settlement and I am going to have 30 days.' 'Well,' he says, 'give me the title insurance and the deed.' 'No,' I says, 'I won't. I am going to take that to my attorney and have him bring it up.' and he says 'Well, I can't go to your attorney's office.' 'Well,' I says, 'that is where you will have to go; he is going to make it up.' 'Well,' he says 'how do I know whether that is any good?' 'Well,' I says, 'you bring your attorney over there and have him examine it, and if you don't want to do that, you go over and put down your money, take the title, take it over to your attorney, and if it don't come up to what you want come back and get your money.'

"And we couldn't get any place. It was 8:30 Saturday evening. So I told him to come back

Monday morning and we would settle it. Well, before Monday morning he called me up on Sunday and he says, 'Can I have possession of that place?' and I says 'No, I ain't doing business on Sunday.' And he says 'Can I show that place to some of my customers?' I says 'No, you can't do that.' " * * *.

"Then he called again Monday evening and wanted to know whether he could take some people over there and show them the place. I told him that he couldn't. Then the next thing I got a letter from his attorney."

The record indicates that after the above-mentioned conversations had occurred the plaintiff consulted a firm of attorneys who wrote the defendant the letter which we quoted in a preceding paragraph. It is agreed that the defendant received the letter. The findings, referring to the above incident, state:

"The defendant did not at said time nor at any time deliver to the plaintiff evidence of marketable title to said premises in the defendant."

The unqualified admissions of the defendant support the finding.

After the foregoing testimony had been given, the plaintiff resumed the witness stand and testified as follows:

"Q. When it came down to the night that you went out there and said that you were ready to pay off on the Magel contract, was anything said between you and Magel as to whether you would or would not pay the money depending on possession of his place?

"A. No; I would have made the purchase price whenever he got the title insurance brought up. I was ready to pay as soon as it was brought up.

"Q. Was that clear to Mr. Magel?

"A. It should have been.

"Q. What was said between you?

"A. I only asked him for title insurance to be brought up. I was ready to pay off.

"Q. What did he say?

"A. He said 'Do you think I am a fool to let you make $1,000 on that place?' * * *

"Q. Then on May 18, the date when you went out there and notified the tenants, and, later, Mr. Magel, that you were ready to close the deal, was anything said at that time about possession?

"A. Only they said they had 30 days.

"Q. And you said what?

"A. Well, I didn't make much saying there at all. We didn't discuss that at all.

"Q. When did you request possession?

"A. I didn't make any exact date.

"Q. You said nothing about possession at all?

"A. I asked for possession but I didn't make any exact date. I asked when I could have it.

"Q. In response to that they said in 30 days?

"A. They said they would take it up with Mr. Magel and he had told them that they could have 30 days. That is the first time I knew that it was 30 days after the papers were fixed up.

"Q. What did Mr. Magel himself tell you when you contacted him later?

"A. He said he absolutely wasn't going to let me make $1,000 on the place.

"Q. Nothing was said about possession at all?

"A. I don't know; there might have been; he might have discussed about the possession too. However, I wasn't paying any attention to a few days' possession. What I wanted was the title insurance to the place."

The defendant presented other evidence in addition to the foregoing, but it was merely cumulative. The facts it portrayed were no different than those disclosed by the testimony which we have mentioned and quoted.

We do not believe that the evidence indicates that the plaintiff conditioned his demand for a deed and evidence of marketable title with a demand for immediate possession. We think that the evidence is incapable of supporting a finding that he demanded immediate possession. It warrants the finding:

"On or about May 18, 1946, plaintiff notified the defendant that he would pay the defendant the balance of the purchase price of said premises in the sum of $6,300.00 upon delivery by the defendant to the plaintiff of evidence of marketable title to said premises in the defendant, and without any other condition whatsoever. The defendant did not at said time nor at any time deliver to the plaintiff evidence of marketable title to said premises in said defendant."

The only way we can reconcile the finding that the "plaintiff demanded immediate possession" with the record is to assume that it concerned the repeated statements made by the defendant that it was agreed before the contract of March 26, 1946, was signed that he would be allowed thirty days after delivery of the deed to vacate the property.

The petition for a rehearing is denied.