Argued November 21, 1957, affirmed March 19, 1958

HUSTON ET AL *v.* DICKSON ET UX

322 P. 2d 920

*Samuel Jacobson,* of Portland, argued the cause

for appellants. With him on the brief was Leo Levenson, Portland.

*Robert A. Bennett,* Portland, argued the cause for respondents. With him on the brief was John L. Foote, St. Helens.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

BRAND, J.

■ This is a suit brought by plaintiff Huston against the defendants John R. and Emma A. Dickson for an injunction restraining the defendants from operating a dry cleaning establishment in Scappoose, Columbia County, Oregon, and for damages in the sum of $10,000. The substance of plaintiff's claim is that defendants sold the dry cleaning business and its good will to the plaintiff Huston and that in violation of plaintiff's rights defendants entered the field as a competitor, thereby damaging the plaintiff. In the midst of the trial Wayne Forbes was added as a party plaintiff. At the hearing in this court counsel for plaintiffs announced that plaintiffs had quit the business. He was asked, "Well, you're not interested in an injunction now, are you?", to which counsel answered, "Not now, we're out of business." The case as it is presented in this court is therefore limited to a claim for damages. The circuit court entered a decree for defendants and the plaintiffs Huston and Forbes appeal.

It is alleged and admitted that for a long time prior to 27 February 1951 defendants had been engaged in the operation of a dry cleaning business in the city of St. Helens, Oregon, and had maintained an outlet in a district contiguous to said city and in Scappoose, and had established an extensive dry cleaning business with

trade routes and a valuable good will. The complaint alleged in paragraph II that on or about 27 February 1951 defendants offered to sell the business equipment, trade routes and outlets, including good will, to plaintiff Huston

"representing to plaintiff that he could continue the operation of said business and enjoy the good will established by said defendants with the assistance of their regular employees, without any interference whatever from said defendants, since said defendants intended to permanently retire from the dry cleaning business for reasons of health and definitely did not plan to again establish or enter into the dry cleaning business in said trade areas nor in any manner interfere with the operation of such a business by plaintiff in said trade area."

Defendants admit that on 27 February 1951 they offered to sell the business to plaintiff Huston, subject to certain conditions, and deny the rest of said paragraph.

Paragraph III of the complaint reads, in part, as follows:

"Relying upon the representations and promises of the defendants as above set forth, plaintiff, on said February 27, 1951, agreed to purchase from the defendants their dry cleaning business known as Majestic Cleaners as a going concern, together with the equipment and good will thereof for the sum of $22,500.00, which sum plaintiff agreed to pay to defendants in accordance with the terms of that certain agreement to sell dated March 17, 1951, * * * ."

It is further alleged that plaintiff immediately took possession and has been and is operating the business and until April 1953 enjoyed the benefits of the business and good will and the loyalty of the employees and fully performed the agreement on his part, which latter allegation is admitted.

Paragraph IV of his complaint alleges that in April 1953 (more than two years after the sale) *"in violation of the intent of the parties, and the terms of the contract of sale,* and without the knowledge or consent of plaintiff, said defendants established and began to engage in the dry cleaning business in Columbia County, Oregon, in direct competition with plaintiff in his normal trade area and trade routes, and, to secure for themselves the business and good will which they sold to plaintiff." (Italics ours.) It was then alleged and denied that defendants "conspired with employees then working for plaintiff and who had previously worked for defendants to leave the employment of plaintiff and engage their services with defendants; that said defendants, directly and through said employees have wrongfully endeavored to divert, did wrongfully divert, and continue to divert trade from plaintiff by soliciting business from plaintiff's customers and potential customers of plaintiff in Columbia County."

Plaintiff also alleged that defendants conspired with the employees to leave his employment for the purpose of wrongfully injuring his business and to assist defendants in diverting plaintiff's customers, and defendants had, since April 1953, continued to operate the dry cleaning business and wrongfully interfered with plaintiff's business and his enjoyment of the benefits of the good will theretofore sold by defendants to plaintiff.

It was further alleged that by reason of their wrongful acts defendants had materially and substantially deprived plaintiff of profits which would otherwise have accrued to him and had wrongfully destroyed a major portion of his business and rendered the good will valueless and thereby caused plaintiff irreparable damage from loss of business and trade, and unless

restrained defendants had threatened to and would continue to operate their business in direct competition with plaintiff to his further damage. Defendants admit the execution of the contract and that they expected to continue to operate their dry cleaning business as then conducted in Scappoose, Oregon, and denied all the other allegations.

We have italicized the allegation in plaintiff's complaint that defendants acted *"in violation of the intent of the parties, and the terms of the contract of sale."* The reason will now appear. The agreement to sell was attached to the complaint as Exhibit "A", and its execution is admitted. It is unnecessary to set it forth in full. It is a conditional sale contract which describes specific personal property (chattels) and "good will", and recites that the buyers shall pay therefor $22,500.00, part down and balance in monthly instalments. Provision is made for care of the property and for strict foreclosure in event of default.

■ This suit is brought for breach of a contract for the sale of chattel property and good will. The contract contains no restrictive covenant obligating the vendors to refrain from competing with the vendee and it contains no mention of "trade routes and outlets." True, the complaint alleges that defendants represented that plaintiff could enjoy the good will established by said defendants without interference and that defendants said they "intended to permanently retire * * * and did not plan to again establish or enter into the dry cleaning business in said trade areas", but the complaint falls short of any direct allegation that the defendants promised to refrain from competing, and plaintiff presents no claim based on alleged fraud. Plaintiff did testify that in the process of negotiation prior to the execution of the contract the defendant

Mr. Dickson told him that he would never go back in the cleaning business. Objection based on the Parol Evidence Rule was sustained as to this testimony and it was received only under the Equity Rule. Rebutting testimony was introduced by defendant, Mr. Dickson, who denied making any such promise. Assuming that the testimony concerning the preliminary negotiations was admissible under the Parol Evidence Rule, it would remain for the court to decide which witness should receive credence. But we hold that the trial court properly rejected that evidence. The agreement of the parties has been reduced to writing. It is complete on its face and parol evidence will not be received to vary its terms. ORS 41.740; *Reddick v. Magel,* 184 Or 270, 195 P2d 713, 197 P2d 683; *Feenaughty v. Beall,* 91 Or 654, 178 P 600; *Ramsdell v. Ramsdell,* 65 Or 428, 132 P 1167; *Davis v. Dees,* 211 La 229, 29 So2d 774; and see 11 ALR2d 1227 and 1253, et seq.

Plaintiffs apparently recognize that their case must rest upon the provisions of the written contract which contains no covenant against competing. They state the issue thus:

> "The question is whether one who agrees to sell and deliver the good will of a business thereby precludes himself from setting up a competing business which will derogate from the good will which he has agreed to sell and deliver."

From Williston's monumental work on contracts, we quote the following:

> "* * * A sale of good will, either in express terms or implied from a sale of a business by the owner, whether an individual or a partnership, carries with it certain implied obligations on the part of the seller. Unless some express restriction is placed on the seller, however, he may enter into subsequent competition with the buyer. But there

is an implied promise that the seller will not specifically solicit by mail or otherwise the trade of old customers, nor do any act that will interfere with the vendee's use and enjoyment of the old business premises or of the old trade names and trade marks of the business. * * *." Williston on Contracts, Revised Edition, Vol 5, § 1640, p 4592.

The rule stated in 6 Corbin on Contracts, § 1386, p 489, is to the same general effect. Other authorities state the rule in somewhat different phraseology. See, 24 Am Jur 813, Good Will, § 18; 38 CJS 957, Good Will, § 12; *J. L. Cooper & Co. v. Anchor Securities Co.*, 9 Wash2d 45, 113 P2d 845; *Getter v. Levine*, 315 Mich 353, 24 NW2d 149; *Tees v. Lee*, 234 Wis 607, 291 NW 792; *Gibbons v. Hansch*, 185 Minn 290, 240 NW 901; *Hilton v. Hilton*, 89 NJApp 182, 104 A 375; *Leggott v. Barrett*, 15 Ch Div 306 (1880); *Fine v. Lawless*, 139 Tenn 160, 201 SW 160.

*Cottrell v. Babcock Printing-Press Manuf'g Co.*, 54 Conn 122, 6 A 791, a well considered case, adopts a more liberal rule and affirms the right of the seller to compete in the same area by means of advertisements, circulars, and personal solicitation of old customers. "Such", it is said, "is the present tendency of the law." *Fish Bros. Wagon Co. v. La Belle Wagon Works*, 82 Wis 546, 52 NW 595, also recognizes the right of a seller of business and good will to solicit customers of the old business.

While the facts were somewhat different from those in the pending case, the decision of this court in *Snow Cap Dairy v. Robanske*, 151 Or 59, 47 P2d 977, is of interest here. In that case the court stated that

"a party will be enjoined from soliciting customers of another party in violation of his contractual obligation to refrain therefrom. * * *"

But the court observed that in all of the cases cited there had been an agreement in the contract to refrain from soliciting the customers of the employer. The court said that when one sells a *professional* business and its good will, "there would seem to be an implied contract that the vendor would not thereafter enter into competition with the vendee." Citing *Foss v. Roby,* 195 Mass 292, 81 NE 199. The court, however, immediately distinguished the rule applicable to mercantile or manufacturing cases from the rule which "seems" to apply in sales of a professional business. The court said:

> "* * * Where a mercantile or manufacturing business is sold with a covenant that the vendor will not engage in competition with the vendee, such an agreement will be enforced although it is in partial restraint of trade: * * *."

We mention in passing that Massachusetts does not follow the majority rule.

We have examined all of the cases cited by plaintiff. *Lerner v. Stone,* 126 Colo 589, 252 P2d 533; *Milgrim Bros. v. Schlesinger,* 168 Or 476, 123 P2d 196; *George v. Burdusis,* 21 Cal2d 153, 130 P2d 399; *J. L. Cooper & Co. v. Anchor Securities Co.,* supra, 9 Wash2d 45, 113 P2d 845; *Von Bremen v. MacMonies,* 200 NY 41, 93 NE 186; *Ranft v. Reimer,* 200 Ill 386, 65 NE 720; *Colton v. Duval,* 254 Mich 326, 237 NW 48; *Trego v. Hunt,* App Cas 7 (Eng). All are clearly distinguishable. Other cases cited by plaintiff go no further than the rule set forth by Williston supra.

The overwhelming weight of authority is that a vendor of good will who makes no covenant to refrain from competition may by fair means enter the competitive area and compete in that area. There is good authority to the effect that he may personally solicit the

patronage of former customers if he refrains from use of confidential lists or records of the old company and does not by unfair means seek to deceive the public as to his identity. However, we will for the purposes of this case apply the rule as stated by Williston.

We turn to the facts. Plaintiffs introduced evidence of a decrease of business following the reentry of defendants into the business in Scappoose. There was undisputed evidence that other competitors were also active, and further evidence that plaintiffs were not doing good work. At most we may say that the evidence was speculative and that to some extent the competition of the defendants tended, along with competition of others, to reduce the business and profits of the plaintiffs. But that is not the issue in this case. Under the written contract, and the law as we have set it forth, the defendants had a right to compete in the same area. In our opinion the evidence does not show any unfair practices on the part of the defendants. They did not solicit business from customers of the plaintiffs and there is no evidence that defendants inveigled any employees away from the plaintiffs. There certainly is not a scintilla of evidence from which the court could find that the defendants wrongfully caused any damage to the plaintiffs. If plaintiffs lost business by reason of the entry of the defendants into competition it was damnum abseque injuria.

The decree of the circuit court is affirmed.