Argued September 7, reversed and remanded October 17, 1962

# THE SIMMS CO. *v.* WOLVERTON ET AL, TREW CORPORATION

375 P. 2d 87

*Donald H. Joyce,* Portland, argued the cause and filed the brief for appellant.

*Clifford B. Olsen,* Portland, argued the cause and filed the brief for respondent Wolverton.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and DENECKE, Justices.

## ROSSMAN, J.

This is an appeal by the defendant, Trew Corporation, from a decree of the circuit court which ordered the disbursement of $3,000 of earnest money which Trew had deposited with the plaintiff June 7, 1960, when Trew proposed to purchase a parcel of real property owned by the defendant Wolverton and which he had listed for sale with the plaintiff real estate broker. At the time of the proposal Trew signed a part of a paper entitled Earnest Money Receipt which constituted upon Trew's part a conditional agreement to purchase; at that time Trew made the aforementioned deposit of the earnest money. The agreement to purchase contemplated that Trew should obtain $60,000 of the purchase money ($93,500) through the execution of a mortgage upon the property. Trew presented evidence which showed that it was unable to find a mortgage lender who would make the loan. When, through Trew's alleged inability to find a lender, the sale failed, conflicting demands were made upon the plaintiff for the disbursement of the earnest money. The plaintiff thereupon instituted this suit which prayed for a decree of interpleader. It was directed by the court to deposit in the registry the sum of $3,000; it did so.

The challenged decree ordered that (1) $250 of the

earnest money be disbursed to the plaintiff for the payment of its attorney fee and (2) the remainder be divided equally between the defendant Wolverton and the defendant Sorenson, the plaintiff's salesman who handled this transaction. The part of the decree which awarded the plaintiff $250 for the services of its attorney in instituting the suit has not been criticized. This appeal challenges only the part of the decree which directed the division of the remainder of the earnest money between Wolverton and Sorenson.

Sorenson filed an answer in the circuit court which consisted of admissions and denials, but no prayer for relief. He did not appear during the trial, and has filed nothing upon appeal. The record contains no findings.

■ The appellant (Trew) submits six assignments of error. The second, to which we will now give attention, reads:

"The court erred in finding that the intending seller might substitute his mortgage for that of the intending purchaser so as to work a forfeiture of the intending purchaser's deposit."

In May of 1960 negotiations began between Wolverton and Trew. They were conducted on behalf of the plaintiff through Sorenson. The paper which Trew signed June 7, 1960, and which reflected the agreements of the parties, contained this provision:

"Purchaser to furnish at the time of closing $23,500.00 Balance of $70,000.00 payable at time of closing to come from first mortgage in principal amount of $60,000.00 and second mortgage in principal amount of $10,000.00. Obtaining of these mortgages as specified on the sheet hereto attached is a condition of this offer. If not obtained, earnest money to be refunded."

The "sheet hereto attached" is a typewritten paper which sets forth the details of the proposed mortgages.

Although Trew made a serious effort, it was unable to obtain the needed "first mortgage in principal amount of $60,000." When Wolverton discovered this difficulty he conferred with an officer of the Oregon Mutual Savings Bank who expressed willingness on the part of his bank to make a first mortgage loan on the property upon substantially the terms outlined in the addenda attached to the earnest money receipt. But it would do so only on condition that Wolverton himself be the mortgagor. The bank would not accept the Trew Corporation as Mortgagor. Wolverton thereupon suggested to Trew that he (Wolverton) become the mortgagor and thereafter convey the property to Trew subject to the mortgage. Trew declined. It contended that with Wolverton rather than itself as mortgagor the legal relationship between the parties would be materially altered from what the agreement contemplated.

Trew contends that in the event of future adverse conditions that might necessitate application for a renewal of the mortgage or its foreclosure it (Trew) would fare better if it were the mortgagor rather than Wolverton. We take the following from 59 CJS, Mortgages, § 401, page 566, headnote b.

> "Although there is some authority to the contrary, a mortgagor may be released from liability where the mortgagee grants to a purchaser of the property an extension of time for payment without the knowledge or consent of the mortgagor. * * * In some jurisdictions the mortgagor is released only to the extent of the value of the land at the time the extension agreement is made * * *."

The text cites *Hulin v. Veatch*, 148 Or 119, 35 P2d 253,

94 ALR 1319. *Hulin v. Veatch* quoted with approval the following from *McFarland v. Melson,* 323 Mo 977, 20 SW2d 63:

"\* \* \* The notes provided 'the makers \* \* \* consent that the time of payment may be extended without notice;' but even so, under Citizens' Bank of Senath v. Douglas, 178 Mo. App. 664, 687, 688, 161 S.W. 601, 607, perhaps Schoonover would have been released if respondents had *assumed* the debt in the beginning. If, however, they only bought subject to the mortgage (and we think the evidence so shows), Schoonover did not become a surety, and the argument fails. Where the extension is granted to a mere purchaser subject to the mortgage, it is said in 19 R.C.L., § 155, p. 383, the better rule is that the mortgagor or grantor is released only to the extent of the value of the land; and in this case the appellant has had the benefit of that by his foreclosure." See also 37 Am Jur, p. 364, § 1070.

From the foregoing we observe that Trew's objection to Wolverton as the mortgagor was not whimsical.

Apparently the parties, shortly after reaching the above juncture of events, assumed that they were at an impasse, for on July 25, 1960, Wolverton requested of Mr. Bartlett F. Cole, Trew's attorney, a letter releasing any interest Trew may have had in the property. This was to enable Wolverton to negotiate a trade with another party which he later did. Also, on July 25, 1960, the Simms Company (plaintiff)—after it had received a letter from Mr. Cole which stated that Trew would not accept a transaction in which Wolverton would be substituted for Trew as mortgagor—sent a letter to Cole informing him that the Simms Company considered the proposed arrangement with the Oregon Mutual Savings Bank "as fully complying

with the conditions of the agreement." It thereby notified Cole that unless Trew performed its part of the bargain the earnest money would be forfeited. Trew stood by its claim that the proposed arrangement would materially differ from what the parties had bargained for and demanded a return of the earnest money, thus forming the basis for this litigation.

The brief filed by the defendant-respondent Wolverton in this court indicates that the parties had inferentially agreed upon a deadline for procuring the mortgage loan. It says: "In the event the aforementioned mortgages could not be obtained prior to August 8, 1960, the agreement was to terminate and the earnest money was to be refunded." All acquiesce in that view.

■ We revert to Mr. Wolverton's contention that his proposal to place a mortgage on the property and then convey subject to the mortgage would have complied with the agreement. His argument is based on the fact that the earnest money receipt does not specify who the mortgagor should be, and then reasons that this omission to specify the mortgagor indicates that the parties intended that anyone, including himself, could be mortgagor. In order to determine the intent of the parties we must consider the instrument in its entirety. *McCreight v. Girardo,* 205 Or 223, 205 Or 228, 280 P2d 408, 287 P2d 414 (1955).

The earnest money receipt contained the following provision: "The property is to be conveyed by good and sufficient deed free and clear of all liens and encumbrances except * * *." Thus it is clear that Wolverton bound himself to convey title free and clear of any encumbrance. A mortgage such as he proposed to place upon the property before executing

the deed would certainly be an encumbrance. The arrangement would therefore be inconsistent with the terms of the agreement. We conclude that Trew was justified in its refusal to accept the proposal of Mr. Wolverton.

The foregoing facts show that (1) the Trew Corporation was unable to find a mortgage lender willing to make the $60,000 mortgage loan, and (2) if Wolverton encumbered the property with a $60,000 mortgage loan, with himself as the mortgagor, before he conveyed the property to Trew, he would be unable to comply with the provisions of the earnest money receipt just quoted.

■ We have already taken notice of the provision of the earnest money receipt which, in referring to the "first mortgage in principal amount of $60,000" and to the smaller mortgage, stated: "Obtaining of these mortgages as specified on the sheet hereto attached is a condition of this offer. If not obtained, earnest money to be refunded." We take the following from 91 CJS, Vendor and Purchaser, § 110, page 1031:

> "Where the sale is conditioned on the vendee's ability to obtain a specified loan on the premises, the contract does not become binding until he is able to procure the intended loan, and when he is unable to secure the intended loan the contract of sale terminates and becomes unenforceable. * * *"

The challenged decree, except the provision for an attorney fee in the sum of $250, is vacated. The cause is remanded to the circuit court with instructions to enter a decree in favor of Trew Corporation for the entire sum of the earnest money less the $250 attorney fee. Costs and disbursements will not be allowed.