Motion to strike renunciations sustained October 8, argued
December 3, 1963, reargued March 30, reversed
April 29, petition for rehearing denied
May 26, 1964

## ALDRICH ET UX *v.* FORBES ET UX

385 P. 2d 618
391 P. 2d 748

560

David P. Templeton and Dusenbery, Martin, Beatty & Parks, Portland, on the motion.

No appearance contra.

ROSSMAN, J.

This cause is before us upon a motion made by the plaintiffs-respondents

"* * * for an order striking or declaring null and void the papers filed by Palma J. Whitney Guthrie and Viola W. Whitney on or about January 22, 1963, entitled 'Renunciation' on the grounds and for the reasons that no application was made and no order entered authorizing Palma J. Whitney Guthrie and Viola W. Whitney to renounce their obligations under the undertaking filed on this appeal.

"Alternatively and in the event this foregoing motion is denied, plaintiffs move for dismissal of this appeal on the grounds that the defendants have not filed a sufficient undertaking with two or more sureties as required by statute."

The document entitled "Renunciation," signed by Palma J. Whitney Guthrie, to which plaintiffs' motion refers, reads:

"Be it remembered that I, Palma J. Whitney Guthrie, whose name is subscribed to that certain

undertaking filed in the within cause on the 27th day of September, 1957, at the hour of 4:25 p.m. which undertaking purports to create joint and several liability with defendants and Viola W. Whitney and Kenneth J. Guthrie, to which undertaking exceptions to the sureties were filed by plaintiff on the 31st day of December, 1962, do hereby renounce and rescind said undertaking and any and all liability thereon, on the grounds and for the reason that the extent of my liability thereon was not fully explained, nor accurately represented to me at the time of the subscription thereof."

Concurrently with the filing of that document there was filed another, likewise entitled "Renunciation," which bore the signature of Viola W. Whitney. It was couched in the exact language of the above with the exception of the needed change in the name of the co-surety.

The proceeding out of which the two "renunciations" and the motion to strike them arose was an action which the circuit court construed as a Forcible Entry and Wrongful Detainer Proceeding. The defendants in it were Mr. Ben F. Forbes and his wife. The subject matter of the action was a city lot and a dwelling house which the Forbes occupied as tenants. Upon the trial of the action judgment was entered for the plaintiffs. Thereupon, the defendants (Forbes) gave notice of appeal and in so doing filed the undertaking on appeal which bore the signatures of Palma J. Whitney Guthrie, Viola W. Whitney, and a third individual as sureties.

There has been filed in this court the abstract of record together with the appellant's (Forbes') brief and the brief of the respondents (the owners). The case is ready for oral argument. The question now occurs as to whether a surety on an appeal under-

taking may rescind his liability at his pleasure. If he may, then his principal (the appellant) may, while the undertaking is in effect, dispose of his assets and after he has done so, the surety may rescind the undertaking.

■■ The statutes which we will now quote provide the conditions and covenants of the appeal bond. They are binding upon the surety, appellant and respondent. It is no misstatement to say that they are a part—an inseparable part—of every undertaking on appeal.

ORS 19.040 (1) provides:

"The undertaking of the appellant shall be given with one or more sureties, to the effect that the appellant will pay all damages, costs and disbursements which may be awarded against him on the appeal; but such undertaking does not stay the proceedings, unless the undertaking further provides to the effect following:

\* \* \*

"(b) If the judgment or decree appealed from is for the recovery of the possession of real property \* \* \* that during the possession of such property by the appellant he will not commit, or suffer to be committed, any waste thereon, and that if such judgment or decree or any part thereof is affirmed, the appellant will pay the value of the use and occupation of such property, so far as affirmed, from the time of the appeal until the delivery of the possession thereof, not exceeding the sum therein specified, to be ascertained and tried by the court or judge thereof."

ORS 105.160, which is a part of our Forcible Entry and Wrongful Detainer statute, states:

"If judgment is rendered against the defendant for the restitution of the real property described in the complaint, or any part thereof, no appeal shall be taken by the defendant from the judgment until

he gives, in addition to the undertaking now required by law upon appeal, an undertaking to the adverse party, with two sureties, who shall justify in like manner as bail upon arrest, for the payment to the plaintiff if the judgment is affirmed on appeal of twice the rental value of the real property of which restitution is adjudged from the commencement of the action in which the judgment was rendered until final judgment in the action."

Referring to undertakings on appeal, 5B CJS, § 2004, page 655, Appeal and Error, says:

"In general the rights, liabilities, and obligations of a surety or a bond on appeal are fixed by statute."

The consideration for the undertaking was plain and ample. It was the prevention of the dismissal of the suit. And since the undertaking which the sureties signed was a stay bond, its further consideration was the inhibition of the enforcement of the judgment.

We quote the following from Corbin on Contracts, § 139:

"One of the most common kinds of forbearances that are bargained for by a promisor is forbearance to bring suit or forbearance to make use of some legal remedy. This is also one of the most common kinds of action in reliance on a promise, even though the promisor did not bargain for it. Of course, such forbearance as this is sufficient consideration, if the claim on which suit or other legal action was threatened was valid and enforceable. Such forbearance as this is sufficient consideration for a promise of a third person, even though the claim is not one that was asserted against him and the forbearance was of no advantage to him.

\* \* \*

"It makes no difference in what court the suit was to be brought or had been brought. The for-

bearance at request to bring a suit, or to proceed further with a suit already brought, may be a sufficient consideration whether the suit was for some legal remedy or was in equity or probate or other court."

■ Execution by the plaintiffs was stayed when the undertaking was filed. Therefore, the desired result was accomplished: the undertaking and its stay went into effect. Moreover, when the sureties saw that the execution was stayed and that the defendants (Forbes) remained in possession of the property, a promissory estoppel was created. See *Schafer et al v. Fraser et ux,* 206 Or 446, 280 P2d 190, 284 P2d 609.

4, 5. We are satisfied that no surety upon an appeal undertaking is at liberty at his pleasure or whim to renounce his liability and, in that manner, rescind the obligation. In the present case each surety states in her renunciation as the reasons for her act "the extent of my liability thereto was not fully explained, nor accurately represented to me at the time of the subscription thereto." It will be observed that the statement does not claim that the surety was unaware of "the extent of my liability" when she signed the undertaking. No averment is made that anyone who requested the surety's signature to the undertaking deceived her or acted out of deceitful motives. It may be that no one spoke to the sureties about the undertaking's terms. In fact, Mr. Forbes states that such was actually the case. If, in truth, neither surety was aware of "the extent of my liability," she does not so indicate nor does she say that she requested information.

*Rogers v. Day,* 232 Or 185, 375 P2d 63, is not similar to this case. In that appeal one Richard G. Harper, after signing as surety a stay bond, failed to appear at the time set by the court for him to justify. The

decision held that at that juncture of events the appeal was subject to dismissal upon the respondent's motion and that, therefore, the surety was released from liability.

We do not believe that the sureties in the case at bar are at liberty to withdraw upon their own whim or pleasure from the undertaking which they signed. There are ways in which a person who has sufficient reason may secure his release from an instrument which he has signed; but the route chosen by these sureties is not such a method. The motion to expunge from the record the renunciations is sustained.

## ON THE MERITS

566

*Charles Paulson,* Portland, argued the cause for appellants. On the briefs were Peterson, Lent & Paulson and Nels Peterson, Portland.

*David P. Templeton,* Portland, argued the cause for respondents. With him on the brief were Dusenbery, Martin, Beatty & Parks and John C. Beatty, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Denecke and Lusk, Justices.

O'CONNELL, J.

■ This is an appeal by defendants from a judgment for plaintiffs in a forcible entry and detainer action. Defendants contend that they hold the land in question as vendees under a land sale contract and not as tenants under a lease and that, therefore, a forcible entry and detainer action will not lie.①

---

① An action of forcible entry and detainer will not lie to oust a person in possession of land under a land sale contract. Purcell v. Edmunds, 175 Or 68, 151 P2d 629 (1944); Schroeder v. Woody, 166 Or 93, 109 P2d 597 (1941).

The pivotal question is whether the instruments signed by the parties created a lease or a land sale contract. The trial court interpreted the instruments as creating only a leasehold interest in defendants.

The first of these instruments is an earnest money receipt executed on June 1, 1962. The parties used a Stevens-Ness Publishing Co. form (Form No. 671E). In the earnest money receipt defendants and LeRoy F. Rebensdorf and his wife are designated as purchasers. The Rebensdorfs are not parties in this action. The purchase price was $23,500, of which $3,000 was paid. The time within which the balance of $20,500 was to be paid was not designated. In the blank space following the printed part of the form reading "Balance of [$20,500] payable as follows" there was inserted in handwriting the provision "Subject to purchaser securing satisfactory Loan." The parties did not complete that part of the form providing for the date upon which the purchasers would be entitled to possession.

On July 1, 1962 the parties executed another instrument entitled "Agreement Regarding Real Estate at 2555 N.W. Westover Road Portland, Oregon." The preamble of this instrument recited that the parties "have entered into an agreement for the purchase" of the premises and that "it is the desire of purchasers to obtain an extension of time within which to pay the balance due on said purchase price." The instrument also recites that "this agreement shall be considered as supplemental to and not in lieu of the earnest money agreement" previously executed. It is further provided "[t]hat this is not a final agreement and upon the compliance with the terms and conditions hereinabove set forth a final agreement will be consumated (sic) providing for a warranty deed conveying a

marketable title, title insurance and the adjustment between the parties of fire insurance, taxes and any other matters commonly set forth in final agreements for the purchase of real property." The substance of the agreement is as follows:

"Therefore it is hereby mutually agreed between the parties hereto for and in consideration of the payment of the sum of $200.00 per month payable on the 1st day of July, 1962, and the 1st day of each month thereafter for the period hereinafter specified and (sic) an extension of time for the payment of the balance due on said contract is hereby granted on the following terms and conditions:

"That the purchasers shall negotiate and consumate (sic) a loan in the sum of $7,000.00 payable on or before the 15th day of September, 1962, and that said purchasers shall make application for a G.I. Loan in the sum of $13,500.00, which negoiation (sic) and consumation (sic) of said G.I. Loan shall be completed on or before the 1st day of October, 1962.

"That the purchasers shall on or before the 6th day of July, 1962, make the necessary repairs to the front porch and other repairs as may be deemed necessary, for the safety of persons painting said premises and that immediately upon making said repairs purchasers shall paint said house in a good workman-like manner pursuant to the requirements of the loan department and diligently pursue said painting until the completion thereof.

"\* \* \* \* \*

"That upon the compliance with the terms and conditions heretofore set forth the provision herein for the payment of rent shall cease and be of no further force and effect and in case that the payments herein and above provided for are made on any part of a month the unused portion of time shall be pro rated between the parties.

"That in case purchasers fail and neglect to

comply with the terms hereof and make said payments and do said repair work and painting with diligence, the payments theretofore made shall be forfeited to sellers, however, said forfeiture shall not be made until October 15, 1962."

Inasmuch as the agreement of July 1, 1962 is by its terms merely supplemental and not "in lieu of" the agreement contained in the earnest money receipt, we shall first examine the character of the legal relationship created by the execution of the earnest money receipt.

■ First it should be observed that an earnest money agreement may be sufficient to create the relationship of vendor and purchaser. We so held in *Alpha Phi of Sigma Kappa v. Kincaid,* 180 Or 568, 178 P2d 156 (1947).[2] In that case the earnest money receipt called for the later execution of a land sale contract embodying a provision for installment payments of the balance of the purchase price. The instrument contained the usual provision making the transaction contingent upon the seller's ability to furnish good title. There was, however, no condition, such as that in the instant case, making the balance of the purchase price payable subject to the purchaser securing a satisfactory loan.

Adopting the reasoning in the *Alpha Phi* case the earnest money agreement in the present case created a vendor-purchaser relationship unless the provision

---

[2] Cf. Reddick v. Magel, 184 Or 270, 195 P2d 713, 197 P2d 683 (1948); Ogooshevitz v. Arnold, 197 Mich 203, 163 NW 946 (1917); Smith v. Mathis, 174 Mich 262, 140 NW 548 (1913). Where, by the terms of the earnest money agreement, the prospective purchaser is not obligated to purchase the property it has been held that only an option to purchase was created. Herndon v. Armstrong, 148 Or 602, 36 P2d 184, 38 P2d 44 (1934); Strong v. Moore, 118 Or 649, 245 P 505 (1926); Scott v. Merrill's Estate, 74 Or 568, 146 P 99 (1915).

for the securing of a satisfactory loan converts the agreement into some other relationship.[3] If the condition that the purchaser secure necessary financing is interpreted as leaving performance optional with the purchaser, a contract for the sale of the land does not arise.[4] But if the agreement is interpreted to mean that the purchaser is obligated to make a reasonable effort to obtain financing that provision is not a condition precedent to the creation of a contract to purchase.[5]

■ We interpret the language "Subject to purchaser securing satisfactory Loan" as imposing an obligation to make a reasonable effort to secure a loan.[6] If the earnest money agreement of June 1, 1962 were the only instrument involved in the case at bar the parties would have created a land sale contract and an action of forcible entry and detainer would not be appropriate to regain possession.

---

[3] Leaving aside the effect of the condition the agreement in the case at bar more strongly indicates an intention to create a contract of sale (as distinguished from an option or some other agreement) because the purchasers paid a substantial amount as a down payment.

[4] Scarborough v. Novak, 92 Ga App 488, 88 SE2d 800 (1955); Zaring v. Lavatta, 36 Idaho 459, 211 P 557 (1922); Storch v. Duhnke, 76 Minn 521, 79 NW 533 (1899); Couch v. Stewart, 200 SW2d 642 (Tex Civ App 1947); I Corbin on Contracts § 149, p. 658 (1963).

[5] Friedman, Contracts and Conveyances of Real Property (2d ed 1963) § 1.5, p. 50 states: "Inasmuch as mortgages are usually obtained only by application of the borrower, a 'condition' that a mortgage be obtained appears instinct with an obligation that the buyer make effort to obtain the mortgage." Cited in support of this statement is Stabile v. McCarthy, 336 Mass 399, 145 NE2d 821 (1957). Accord, Williams v. Cormier, 100 So2d 307 (La App 1958); Huckleberry v. Wilson, 284 SW2d 205 (Tex Civ App 1955).

[6] The Simms Co. v. Wolverton et al, 232 Or 291, 375 P2d 87 (1962) is distinguishable. That case merely stands for the proposition that where, after making a reasonable effort, the purchaser cannot obtain financing the contract is not binding on him. The contract is created by the exchange of promises but the contract is cancelled by failure to perform a condition.

■ We must inquire, then, whether the agreement of July 1, 1962 changed the relationship of the parties from that of vendor and purchaser under a land sale contract to that of landlord and tenant under a written lease. As we have already noted, the July 1 agreement is specifically designated as "supplemental" and "not in lieu of" the June 1 agreement, indicating an intention that the basic nature of the relationship first created was not to change. Any ambiguity which may have been created by the June 1 agreement with respect to the condition that the purchasers obtain financing is removed by the clear statement in the July 1 agreement of the purchasers' obligation to do so.

The July 1 agreement does, however, create an ambiguity by reference to the $200 monthly payments as "the payment of rent." The July 1 agreement provides that the purchasers are obligated to pay $200 during the period they were to seek a loan. The $200 payment, it will be noted, is described as the consideration for "an extension of time for the payment of the balance due on said contract * * *." The monthly payment is later referred to as rent in the clause providing "[t]hat upon the compliance with the terms and conditions heretofore set forth the provision herein for the payment of rent shall cease * * *."

It appears, then, that the $200 monthly payment could be regarded as the payment for the use of the property for a limited period or the consideration for the extension of time to secure a loan, or possibly as a payment for both of these purposes. If the July 1 agreement is construed to create a lease the entire transaction would then seem to be a lease with an option to purchase, the $3,000 payment being subject

to forfeiture upon failure of the lessee to comply with the conditions.

But in view of the fact that the total purchase price of the property was only $23,500 it does not seem reasonable that the parties would regard a sum as large as $3,000 as the consideration for an option. Further, it will be noted that the July 1 agreement required the purchasers to make repairs and to paint the premises. This obligation imposed upon the purchasers with its concomitant expense would not be inconsistent with a lease if the lease were for a period long enough to enable the lessees to reap some benefit from the improvements during the tenancy. But the improvements which the purchasers here agreed to make would be of little use to them unless they could get a loan and continue to occupy the premises as purchasers of the property rather than as lessees.

It is our conclusion that the July 1 agreement was intended to continue the relationship of vendor and purchaser initially created by the earnest money agreement. This being so, an action of forcible entry and detainer does not lie.

Judgment reversed.

ROSSMAN, J., dissenting.

The majority states: "The pivotal question is whether the instrument signed by the parties created a lease or a land sale contract." I do not believe that that is the crucial question. It clearly is not the question which the plaintiff wishes answered. The pivotal question in my belief is this:

If a vendor does not care to foreclose a defaulted contract and wishes nothing but possession, does the law demand that he nevertheless foreclose the contract and not prosecute a forcible entry and detainer

action? We add that in the present instance the contract does not bind the would-be buyer to purchase, but gives him possession for three months subject to his payment of rent in the amount of $200 monthly.

Let us make clear the following elements of the situation before us:

(1) all of the undertakings of the buyer, including the promise to pay rent, are in a state of default;

(2) the would-be buyer (Forbes), a lawyer, prepared the instrument and, therefore, ambiguities in it should be resolved against him;

(3) the instrument does not bind the buyer to purchase the property;

(4) the agreement requires the would-be buyer to pay rent in the amount of $200 a month for three months while he attempts to secure a mortgage loan and thereby finance the purchase of the property;

(5) the appellants (Forbes) did not pay the "down payment" of $3000 which the majority mention; Mr. Forbes conceded that that payment was made by the Rebensdorfs who are not appellants and who do not contest the plaintiff's action; it is very doubtful whether the appellants (Forbes) have any financial interest whatever in this property.

Before moving on, it is well to take note of the fact that the agreement itself, which, as has been stated, was written by the appellant, an attorney, says "subject to the purchaser (Forbes) securing satisfactory loan"; in other words, the Forbes conditioned their undertaking to buy upon their ability to secure a satisfactory loan. The paper gave the would-be buyer three months in which to obtain the "satisfactory loan" but provided that they must pay $200 a month rent. It then said that if a satisfactory loan is found, the provisions for the payment of rent shall cease.

It is clear that the Forbes have defaulted in the payment of rent. It would seem equally clear that since their right to possession was conditioned upon their payment of rent the plaintiff is entitled to possession. If the Forbes have any interest in the property, they can establish that interest in another proceeding without holding possession of this property rent free in the meantime.

The earnest money receipt together with the supplemental agreement of July 1 did not create the status of vendor and purchaser between the parties. That relationship arises from the execution of a contract to sell real property. The agreement we have before us is conditional upon the "purchaser securing satisfactory loan." As we said in *Simms Company v. Wolverton*, 232 Or 291, 375 P2d 87, in the words of 91 CJS, Vendor and Purchaser, § 110, if "the sale is conditioned on the vendee's ability to obtain a specified loan on the premises, the contract does not become binding until he is able to procure the intended loan." There is no mutuality of obligation; consequently, the agreement in issue does not rise to the status of a realty contract of sale. At the most, the agreement gave the defendants and the Rebensdorfs an option to purchase the premises which could be exercised in the event they were successful in securing the specified financing.

The supplemental agreement notes in its final paragraph:

> "That this is not a final agreement and upon the compliance with the terms and conditions hereinabove set forth a final agreement will be consumated providing for a warranty deed conveying a marketable title, title insurance and the adjustment between the parties of fire insurance, taxes and any other matters commonly set forth in final agreements for the purchase of real property."

This paragraph clearly expresses what we have already observed in the terms of the agreement.

Possession of the premises is not a necessary incident of an option to purchase; neither is possession as a tenant inconsistent with the rights of an optionee. Many leases extend to the lessee an option to purchase the property, and it cannot be seriously urged that he thereby becomes a purchaser and loses his status as a tenant prior to the exercise of his option. The agreement of July 1, 1962, gave the defendants possession for a stated per month price during the period the option was to run. The $200 per month was solely for the right to use the premises and was not to be applied in any way to reduce the purchase price. The agreement specified that in the event the balance of the purchase price was paid, the portion of the $200 payment remaining unused by occupancy of the premises would be returned. In other words, when the possession of the premises as a tenant was terminated by payment of the purchase money the tenant would be compensated for his unexpired term of lease by a refund of the rent. In this situation the forcible entry and detainer action was proper.

Defendants-appellants next urge as a ground for their motion of nonsuit that "Since the supplemental agreement raises complicated questions of legal construction, an FED will not lie because it is a summary proceeding and not equipped to resolve these questions." As we have noted, the status of the parties and their possessory rights can be determined by a reading of the two instruments. It remains after a reading of these documents simply to determine as a question of fact whether plaintiff has sustained his forcible entry and detainer plea. Any complicated issues of title and

contract construction were created by defendants' answer on counterclaim in equity.

Defendants argue in construing the agreements that the court must consider them in a light most favorable to the defendants who are the grantees. This rule of construction is applied when a reading of the instrument discloses an ambiguity that must of necessity be resolved. Again we must note the instruments in question disclose on their face the rights of the parties that are necessary of determination in an action of this type. No ambiguity appears and no need exists for the invocation of the rule just mentioned.

The general rule in forcible entry and detainer actions is that equitable defenses may not be raised. This rule requires a defendant who would assert matters in equity to bring an original suit by which the forcible entry and detainer action is stayed while a final determination is made of the equitable rights. See *Morris v. Davis,* 334 Mo 411, 66 SW2d 883; *Pefkaros v. Harmon,* 20 Del Ch 238, 174 A 124.

In Oregon, however, the rule is different. Defendant is entitled to invoke the equity side of the court in an action that commenced as a forcible entry and detainer proceeding. But while Oregon allows the defenses to be raised, the rule is not without limitation. ORS 16.460 (2) provides:

> "In an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may set such matters up by answer, without the necessity of filing a complaint on the equity side of the court."

This statute relating to equitable defenses is applicable to a summary proceeding of the nature of this case. *Friedenthal v. Thompson,* 146 Or 640, 31 P2d 643.

Clearly, the statute requires the equitable issues must arise out of facts material to the defense of the law action. The facts defendants alleged in support of their equitable prayer are in no way material to a defense of the action of forcible entry and detainer. As a defense defendants alleged the relationship of vendor and purchaser was created and that, therefore, a forcible entry and detainer action would not lie. In support of the prayer for equitable relief it will be recalled defendants alleged that plaintiffs submitted a false title report which induced them to pay the down payment and expend money for repairs. Thus, the defendants do not seek the reformation of either of the two documents which would be equitable defenses but seek judgment against the plaintiffs upon charges of fraud. No facts requiring the interposition of equity are alleged. The equitable matters were properly excluded from the trial court's consideration.

For the above reasons I dissent.

PERRY, J., joins in this dissent.